GREENWOOD *v.* UNITED STATES.

No. 460.   Argued January 25, 1956.—Decided March 5, 1956.

*William J. Burrell,* acting under appointment by the Court, 350 U. S. 945, argued the cause and filed a brief for petitioner.

*Solicitor General Sobeloff* argued the cause for the United States. With him on the brief were *Assistant Attorney General Olney, Charles F. Barber, Beatrice Rosenberg* and *Julia P. Cooper.*

Mr. Justice Frankfurter delivered the opinion of the Court.

This case involves the construction and constitutional validity of the Act of September 7, 1949, 63 Stat. 686, now codified in 18 U. S. C. §§ 4244–4248, "To provide for the care and custody of insane persons charged with or convicted of offenses against the United States, and for other purposes."

Section 4244 provides a procedure for determining mental incompetency during the period "after arrest and prior to the imposition of sentence or prior to the expiration of any period of probation." [1] Section 4245 sets up a similar procedure for persons in prison believed to have been mentally incompetent at the time of their trial when the issue was not raised or determined before or during trial. Section 4246 states that whenever the trial court shall determine, under §§ 4244 and 4245, that an accused

---

[1] Sec. 4244: "Whenever after arrest and prior to the imposition of sentence or prior to the expiration of any period of probation the United States Attorney has reasonable cause to believe that a person charged with an offense against the United States may be presently insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense, he shall file a motion for a judicial determination of such mental competency of the accused, setting forth the ground for such belief with the trial court in which proceedings are pending. Upon such a motion or upon a similar motion in behalf of the accused, or upon its own motion, the court shall cause the accused . . . to be examined as to his mental condition by at least one qualified psychiatrist, who shall report to the court. For the purpose of the examination the court may order the accused committed for such reasonable period as the court may determine to a suitable hospital or other facility to be designated by the court. If the report of the psychiatrist indicates a state of present insanity or such mental incompetency in the accused, the court shall hold a hearing, upon due notice, at which evidence as to the mental condition of the accused may be submitted, including that of the reporting psychiatrist, and make a finding with respect thereto. . . ."

is or was mentally incompetent, the court may commit the accused to the custody of the Attorney General until the accused is mentally competent to stand trial or until the pending charges against him are disposed of according to law. Section 4246 further provides that if the court, after hearing as provided in the preceding §§ 4244 and 4245, finds that the conditions specified in § 4247 exist, the commitment shall be governed by § 4248.[2] Section 4247 states that when a prisoner's sentence is about to expire and the prison board of examiners finds him insane and a probable danger to the officers, property, or other interests of the United States, then the court shall hold a hearing and, if it determines that those conditions exist, it may commit the prisoner to the custody of the Attorney General.[3] Under § 4248 the

[2] SEC. 4246: "Whenever the trial court shall determine in accordance with sections 4244 and 4245 . . . that an accused is or was mentally incompetent, the court may commit the accused to the custody of the Attorney General or his authorized representative, until the accused shall be mentally competent to stand trial or until the pending charges against him are disposed of according to law. And if the court after hearing as provided in the preceding sections 4244 and 4245 shall determine that the conditions specified in the following section 4247 exist, the commitment shall be governed by section 4248 as herein provided."

[3] SEC. 4247: "Whenever the Director of the Bureau of Prisons shall certify that a prisoner whose sentence is about to expire has been examined by the board of examiners referred to in . . . section 4241, and that in the judgment of the Director and the board of examiners the prisoner is insane or mentally incompetent, and that if released he will probably endanger the safety of the officers, the property, or other interests of the United States, and that suitable arrangements for the custody and care of the prisoner are not otherwise available, the Attorney General shall transmit the certificate to the clerk of the court for the district in which the prisoner is confined. . . . If upon such hearing the court shall determine that the conditions specified above exist, the court may commit the prisoner to the custody of the Attorney General, or his authorized representative."

commitment shall run until sanity is restored, or until the prisoner's condition is so improved that he will not endanger the officers, property, or other interests of the United States, or until suitable arrangements are made for the care of the prisoner by his State of residence—reserving to the prisoner his right to establish his eligibility to release by writ of habeas corpus.[4]

Petitioner, a resident of Cleveland, Ohio, was indicted on November 20, 1952, by a grand jury of the Western District of Missouri on two counts, for robbery from a United States Post Office in Kansas City, Missouri, and for felonious assault there on a postal employee. Under Rule 20 of the Federal Rules of Criminal Procedure petitioner signed a waiver of trial in the Western District of Missouri and was transferred to the Eastern Division of the Northern District of Ohio. Acting on the suggestion of appointed counsel, the district judge ordered petitioner examined by a psychiatrist. After a hearing in which the examining psychiatrist testified that it was doubtful that petitioner, because of his mental condition, could have fully understood the significance of the waiver he signed, the District Court, on February 2, 1953, remanded

---

[4] SEC. 4248: "Whenever a person shall be committed pursuant to section 4247 . . . his commitment shall run until the sanity or mental competency of the person shall be restored or until the mental condition of the person is so improved that if he be released he will not endanger the safety of the officers, the property, or other interests of the United States, or until suitable arrangements have been made for the custody and care of the prisoner by the State of his residence, whichever event shall first occur. . . . *Provided, however,* That nothing herein contained shall preclude a prisoner committed under the authority of section 4247 hereof from establishing his eligibility for release under the provisions of this section by a writ of habeas corpus. The Attorney General or his authorized representative shall have authority at any time to transfer a prisoner committed to his custody under the authority of section 4246 or section 4247 hereof to the proper authorities of the State of his residence."

the case to the District Court for the Western District of Missouri for disposition.

That court ordered the accused delivered to the United States Medical Center for Federal Prisoners at Springfield, Missouri, for the purpose of ascertaining his mental condition. On April 15, 1953, the Chief of the Psychiatric Service at the Medical Center filed his report concluding that the accused was legally insane, in that he was unable to choose between right and wrong and could not, by reason of his mental condition adequately cooperate with counsel in his own defense.

Petitioner was then transferred to jail; but, on November 16, 1953, the District Court entered an order returning him to the Medical Center for determination whether he was acutely or chronically insane. The report of the Neuropsychiatric Staff of the Medical Center, filed February 1, 1954, indicated that petitioner was "psychotic and incompetent," that "it is unlikely that this subject will regain his sanity in the near future," and recommended that "consideration be given to transferring this subject to a state hospital in his state of residence." The District Court, on the following day, ordered a further hearing under § 4246 to "resolve the power to commit defendant as mentally defective under the conditions specified in Section 4247. . . ." and for that purpose requested the Director and Board of Examiners of the Medical Center to certify whether in their judgment the defendant, if released, would "probably endanger the safety of the officers, the property, or other interests of the United States, and that suitable arrangements for the custody and care of the (defendant) are not otherwise available." The report of the Board, dated February 4, 1954, concluded that the accused remained "psychotic and incompetent," and stated that "at the present time there appears to be little likelihood of his recovering to the extent that he might be considered competent in the

near future." In reply to the request of the District Court, "[t]he Board agreed that this subject might be considered potentially dangerous to the extent that if released he might conceivably persist in criminal activities of the type with which he is presently charged. In considering this man's mental illness the Board finds that he does not hold any fixed delusions concerning wanting to harm any person or group of persons, either officials of the government or otherwise, so that in this respect he probably would not constitute a danger to the safety of officers, property, or other interests of the United States. . . . The Board further recommends that this subject be considered a suitable candidate for state hospital care if suitable arrangements can be made." In May 1954 petitioner was transferred to the custody of the State of Ohio where he was again examined by the psychiatrist who had made the examination when petitioner was transferred to the District Court for the Northern District of Ohio in 1952. This time the psychiatrist found that petitioner "is now in a state of remission equivalent to a recovery. He is not now insane in the legal sense." Petitioner was then released by the Ohio authorities.

Petitioner was rearrested in Ohio under the original indictment, which was still pending, and on June 16, 1954, removed to the Western District of Missouri. On June 18, counsel appointed for petitioner moved the court to appoint at least one qualified psychiatrist to inquire into petitioner's mental competency and to hold a hearing for that purpose. Two psychiatrists were appointed and were directed to report to the court. Petitioner was also recommitted to the United States Medical Center for Federal Prisoners at Springfield, Missouri, for further examination.

The hearing on petitioner's sanity was held on July 15. The two psychiatrists appointed by the court testified

that in their belief petitioner was sane. The first three reports of the Medical Center were received in evidence, along with a fourth, a report of the Neuropsychiatric Staff of the Medical Center at Springfield, dated July 8, 1954. This latest report concluded "that the subject remains legally insane by reason of a major mental disorder which would prevent him from having a proper understanding of the proceeding pending against him and which also impairs his ability to properly assist in his own defense." The staff further concluded "that this subject's prognosis for recovery appears to be poor and that he will probably require indefinite hospitalization to insure his own safety and that of society. The staff does not consider the subject to be potentially dangerous except to the extent that if released, he might persist in engaging in criminal activities similar to those with which he is presently charged." The Chief of the Psychiatric Service at the Medical Center testified at this hearing to the same effect.

The District Court, in its order of July 30, found that the accused was insane and so mentally incompetent that he could not stand trial, that, if released, he would probably endanger the safety of the officers, property, or other interests of the United States, and that no suitable arrangements for custody and care, other than commitment to the custody of the Attorney General, were available. Petitioner was therefore committed to the custody of the Attorney General until his sanity should be restored, or his mental condition so improved that, if released, he would not endanger the safety of the officers, property, or other interests of the United States, or until suitable arrangements could be made for the custody and care of defendant by Ohio, the State of his residence. 125 F. Supp. 777, 778. Petitioner appealed from this judgment and the Court of Appeals for the Eighth Circuit, its seven circuit judges sitting *en banc,* affirmed, one judge dis-

senting. 219 F. 2d 376. Because of the important issue of federal power raised by the case and because of conflicting views in the Courts of Appeals, compare *Higgins* v. *United States,* 205 F. 2d 650, and *Wells* v. *Attorney General,* 201 F. 2d 556, with the decision of the Court of Appeals for the Eighth Circuit in this case, we granted certiorari. 350 U. S. 821.

A detailed history of the legislation is set forth in the opinion of the Court of Appeals. 219 F. 2d, at 380–384. It is sufficient to note here that the bill was proposed by the Judicial Conference of the United States after long study by a conspicuously able committee, followed by consultation with federal district and circuit judges.

The statute deals comprehensively with those persons charged with federal crime who are insane or mentally incompetent to stand trial. It provides a procedure for determination of such insanity or mental incompetence, and further provides for commitment of those found to be insane or mentally incompetent. Petitioner's assertion that the statute deals only with the problem of temporary mental disorder is not supported by the language of the statute, and the report of the Committee of the Judicial Conference clearly indicates that the statute was designed to deal with mental disability which seems more than temporary:

> "If the accused's mental disability appears not to be a transitory condition, but in all likelihood he will, because of his insanity, never be brought to trial, it would seem that as a general rule the federal government should not assume responsibility for his hospitalization merely because he has been accused (but not convicted) of a federal crime. Normally such a person should be turned over to the state of his domicile to be confined in a state mental hospital if hospitalization is called for.

"But there may be cases where the accused's
domicile cannot be satisfactorily established and
where no state will assume responsibility for his
care. The federal government may then be faced
with the practical situation that it has lawful cus-
tody of a person whom it is not safe to let at large.
In a recent case in the District of Massachusetts,
*United States* v. *Torrez* [unreported], a Filipino was
brought into the district and indicted for murder on
the high seas. After notice of hearing at which
alienists for the government and for the defendant
testified, the judge found that the defendant was at
present insane and unable rationally to aid in the
conduct of his defense. Obviously in such case there
should be authority in the court to cause the con-
finement of the accused in a mental hospital."

The District Court pursued the appropriate procedure
in holding a hearing to determine the existence of the
conditions specified in § 4247, once it determined that
the accused's mental incompetence seemed more than
temporary. Although the language of the statute and
the report of the Committee of the Judicial Conference
demonstrate that the statute deals generally with the
situations both of temporary and more than temporary
insanity, one could infer from the reports on the bill by
the Committee, by the Judicial Conference itself, and by
the committees of both Houses of Congress that the
specific commitment under § 4248 was designed only for
prisoners whose sentences are about to expire. But this
is a case for applying the canon of construction of the wag
who said, when the legislative history is doubtful, go to
the statute. The second sentence of § 4246 clearly makes
commitment under § 4248 applicable to persons found
mentally incompetent under § 4244 who meet the condi-
tions specified in § 4247.

We reach then the narrow constitutional issue raised by the order of commitment in the circumstances of this case. The petitioner came legally into the custody of the United States. The power that put him into such custody—the power to prosecute for federal offenses—is not exhausted. Its assertion in the form of the pending indictment persists. The District Court has found that the accused is mentally incompetent to stand trial at the present time and that, if released, he would probably endanger the officers, property, or other interests of the United States—and these findings are adequately supported. In these circumstances the District Court has entered an order retaining and restraining petitioner, while in his present condition, with habeas corpus always available when circumstances warrant. This commitment, and therefore the legislation authorizing commitment in the context of this case, involve an assertion of authority, duly guarded, auxiliary to incontestable national power. As such it is plainly within congressional power under the Necessary and Proper Clause. Art. I, § 8, cl. 18.

The fact that at present there may be little likelihood of recovery does not defeat federal power to make this initial commitment of the petitioner. We cannot say that federal authority to prosecute has now been irretrievably frustrated. The record shows that two court-appointed psychiatrists found petitioner sane and competent for trial. While the District Court did not accept their conclusion, their testimony illustrates the uncertainty of diagnosis in this field and the tentativeness of professional judgment. The only certain thing that can be said about the present state of knowledge and therapy regarding mental disease is that science has not reached finality of judgment, even about a situation as unpromising as petitioner's, at least as indicated by the report of the United States Medical Center at Springfield.

Certainly, denial of constitutional power of commitment to Congress in dealing with a situation like this ought not to rest on dogmatic adherence to one view or another on controversial psychiatric issues.

We decide no more than the situation before us presents and equally do not imply an opinion on situations not now before us. The judgment of the Court of Appeals is

*Affirmed.*

MR. JUSTICE HARLAN took no part in the consideration or decision of this case.