**Darrell Eugene ROYAL, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 6229.**

United States Court of Appeals
Tenth Circuit.

Jan. 19, 1960.

John J. Jurcyk, Jr., Kansas City, Kan., for appellant.

Milton P. Beach, Asst. U. S. Atty., for the District of Kansas, Kansas City, Kan., (Wilbur G. Leonard, U. S. Atty., for the District of Kansas, Topeka, Kan., was with him on the brief), for appellee.

Before MURRAH, Chief Judge, BREITENSTEIN, Circuit Judge, and CHRISTENSON, District Judge.

CHRISTENSON, District Judge.

Questions involving the construction of the Act of September 7, 1949, 63 Stat. 686, codified at 18 U.S.C. §§ 4244–4248 (Chapter 313) are raised by the appellant, who after arrest but prior to sentence on a charge of murder on lands under the exclusive jurisdiction of the United States [1] was found by the trial court to be so mentally incompetent that he could not stand trial and that if released he probably would endanger the safety of officers, property, or the other interests of the United States. Accordingly, he was committed to the custody of the Attorney General "* * * until his sanity or mental competency shall be restored or until the mental condition which the psychiatrists now find him to

be suffering from is so improved that if released he will not endanger the safety of the officers, the property, or of other interests of the United States or until suitable arrangements can be made for his custody and care by the State of his residence. * * *" [2]

It is asserted by appellant that the trial court erred in its determinations that commitment is proper in the case of one "permanently" insane, or whose mental condition does not make him specifically dangerous to persons, property or interests of the United States as distinguished from the public in general, and in failing to designate among the examining psychiatrists one of appellant's own choice.

The murder indictment against Royal in the District of Kansas was returned in 1955. At that time he was already an inmate of the United States Penitentiary at Leavenworth, Kansas, where the alleged homicide occurred, but this circumstance is deemed to have no significance in the present inquiry. Royal filed a motion for the determination of his mental competency to stand trial on the murder charge in November, 1955. The district court ordered that he be examined mentally at the United States Medical Center at Springfield, Missouri, and returned to the District of Kansas on or before February 6, 1956. Obviously, this was a temporary commitment only for the purpose of obtaining a report of a qualified psychiatrist as a basis for a further hearing before the court to determine the competency of the accused to stand trial.[3] Such a hear-

1. Drawn under 18 U.S.C. § 1111.

2. Following substantially the language of 18 U.S.C. § 4248.

3. 18 U.S.C. § 4244. "Mental incompetency after arrest and before trial.—Whenever after arrest and prior to the imposition of sentence * * * the United States Attorney has reasonable cause to believe that a person charged with an offense against the United States may be presently insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense, he shall file

a motion for a judicial determination of such mental competency of the accused, setting forth the ground for such belief with the trial court in which the proceedings are pending. Upon such a motion or upon a similar motion in behalf of the accused, or upon its own motion, the court shall cause the accused, whether or not previously admitted to bail, to be examined as to his mental condition by at least one qualified psychiatrist, who shall report to the court. For the purpose of the examination the court may order the accused committed for such reasonable period as the court may determine to a

ing was held upon Royal's return to the District of Kansas on March 15, 1956. Whereupon, the court found that he was presently insane and otherwise so mentally incompetent as to be unable to understand the proceedings against him, that he would be unable properly to assist in his own defense and that his release would endanger the safety of the officers, the property and other interests of the United States. It should be noted that the latter finding is in line with certain wording concerning the non-endangering of officers, property or other interests of the United States found in sections 4247 [4] and 4248 [5] of Title 18, United States Code, but that the actual commitment, following the language of section 4246 [6], was "To the custody of the Attorney General or his authorized representative until the said Darrell Eugene Royal shall be mentally competent to stand trial or until the pending charges against him are disposed of according to law."

In November, 1958, almost three years later, Royal filed a motion to dismiss the murder indictment in reliance upon rule 48 of the Federal Rules of Criminal Procedure, 18 U.S.C.A. [7] The district court, reciting the prior commitment "under Section 4246, U.S.C.A., Title 18," summarily denied the motion to dismiss the indictment and, for lack of merit, a subsequent motion for leave to appeal in forma pauperis. No complaint is made

suitable hospital or other facility to be designated by the court. If the report of the psychiatrist indicates a state of present insanity or such mental incompetency in the accused, the court shall hold a hearing, upon due notice, at which evidence as to the mental condition of the accused may be submitted, including that of the reporting psychiatrist, and make a finding with respect thereto. * * * "

4. 18 U.S.C. § 4247. "Alternate procedure on expiration of sentence.—Whenever the Director of the Bureau of Prisons shall certify that a prisoner whose sentence is about to expire has been examined by the board of examiners referred to in title 18, United States Code, section 4241, and that in the judgment of the Director and the board of examiners the prisoner is insane or mentally incompetent, and that if released he will probably endanger the safety of the officers, the property, or other interests of the United States, and that suitable arrangements for the custody and care of the prisoner are not otherwise available, the Attorney General shall transmit the certificate to the clerk of the court for the district in which the prisoner is confined. Whereupon the court shall cause the prisoner to be examined by a qualified psychiatrist designated by the court and one selected by the prisoner, and shall, after notice, hold a hearing to determine whether the conditions specified above exist. * * * "

5. 18 U.S.C. § 4248. "Termination of custody by release or transfer.—Whenever a person shall be committed pursuant to section 4247 of this title, his commitment shall run until the sanity or mental competency of the person shall be restored or until the mental condition of the person is so improved that if he be released he will not endanger the safety of the officers, the property, or other interests of the United States, or until suitable arrangements have been made for the custody and care of the prisoner by the State of his residence, whichever event shall first occur. Whereupon the Attorney General or his authorized representative shall file with the court which made said commitment a certificate stating the termination of the commitment and the ground therefor: * * * "

6. 18 U.S.C. § 4246. "Procedure upon finding of mental incompetency.—Whenever the trial court shall determine in accordance with sections 4244 and 4245 of this title that an accused is or was mentally incompetent, the court may commit the accused to the custody of the Attorney General or his authorized representative, until the accused shall be mentally competent to stand trial or until the pending charges against him are disposed of according to law. And if the court after hearing as provided in the preceding sections 4244 and 4245 shall determine that the conditions specified in the following section 4247 exist, the commitment shall be governed by section 4248 as herein provided."

7. Subdivision (b) of rule 48 provides that if there is unnecessary delay in presenting the charge to a grand jury or in filing an information against a defendant who has been held to answer to the district court, or if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information or complaint.

of these rulings, which are relevant here only for what light, if any, they may throw upon subsequent proceedings.

Royal was being detained at the United States Medical Center located within the Western District of Missouri, Western Division. On June 8, 1959, the United States District Court for that district, in habeas corpus proceedings, No. 12068, Darrell E. Royal v. Dr. R. O. Settle, held that the commitment of the petitioner by the district court of Kansas until he was mentally competent to stand trial or until the pending charges against him were disposed of according to law, while made "pursuant to section 4246 * * * was one of a temporary character." [8] It therefore ordered the return of the petitioner to the committing court for such further proceedings as it might deem proper.

A further hearing in the District of Kansas is the proceeding in question here. A psychiatrist from the United States Medical Center, Springfield, Missouri, testified but the court declined to appoint a psychiatrist of Royal's selection.[9] The evidence before the court clearly indicated that Royal was suffering from mental illness, that by reason thereof he did not have the ability to understand the charges pending against him or properly to assist in his defense, and that it was reasonably necessary to maintain him in maximum custody because of the difficulty he had with other persons, or danger to himself.

The expert explained that if Royal's illness developed a delusion and fixated on a particular individual, then he became dangerous to that individual; that this might be a citizen in a community, a next door neighbor, an F.B.I. man or anybody, and that the dangerousness would not be with reference to any particular person, interest or property of the United States but would relate generally to members of the community and to society.

On the question of whether the mental illness was temporary or permanent in nature, the psychiatrist said that it was characterized by periods of improvement or partial remission, and periods of exacerbation when symptoms became more severe; that as a physician he would not say that a mental illness (presumably this one) was permanent, but that because of the absence of criteria which would permit him to give a prognosis that Royal would recover in the foresee-

---

**8.** The Missouri court did not refer to the initial commitment by the Kansas court for the purpose of observation and report to the court, but believed that the subsequent commitment after report and hearing was also temporary, saying, "From the provisions of Chapter 313, supra, and the above cited opinions" (United States v. Greenwood, D.C., 125 F.Supp. 777; Id., 8 Cir., 219 F.2d 376; Id., 350 U.S. 366, 76 S.Ct. 410, 100 L.Ed. 412) "we think it necessary that if petitioner is to be further detained in the custody of respondent because of charges pending against him, he should be returned to his committing court for further hearing and determination pursuant to the procedure followed in the Greenwood case. A judgment of commitment must be strictly construed. Seemingly, the present judgment of commitment of petitioner to the custody of the Attorney General and his confinement in the Medical Center is not sufficient upon which a determination may be made as to an express length of time for his commitment in the Medical Center. That apparently is the interpreta-

tion given to the present commitment of petitioner by respondent and the Neuro-Psychiatric Staff of the Medical Center for Federal Prisoners, at Springfield, Missouri, and this Court is in agreement with that interpretation thereof, namely, that said commitment is only a temporary one and petitioner cannot be detained thereunder for an unreasonable indefinite period of time."

**9.** After expressing uncertainty as to whether the hearing was under section 4246 or section 4247 and as to whether or not the prisoner was entitled as of right to nominate a psychiatrist, the trial court determined that the hearing was pursuant to section 4246 in which the conditions specified in section 4247 could be found. Accordingly, noting that the prisoner did not have a particular psychiatrist in mind, and being of the view that any appointment upon his nomination would only delay the disposition of the matter without being likely to add to the information already available, it denied the request.

able future, he would say, "if he had to fit his professional judgment into the law," that in legal terminology he was "permanently insane." There was also proof that Royal was unacceptable for confinement in a state mental institution because of uncertainty concerning his residence.

Upon the basis of such evidence the trial court made and entered the findings referred to, and the commitment quoted, in the opening paragraph of this opinion. Right to proceed in forma pauperis was granted, and a timely appeal has been taken to this court from the last mentioned commitment.

 Appellant contends, in reliance upon principles heretofore discussed by this court in Wells, by Gillig v. Attorney General of the United States, 10 Cir., 1953, 201 F.2d 556, that if an accused be permanently insane, and there appears no chance for his recovery, he may not be held in custody by the federal government under chapter 313 of Title 18 because federal prosecution would be irretrievably frustrated. Appellant disaffirms any controlling effect from the later case of Greenwood v. United States, 350 U.S. 366, 76 S.Ct. 410, 100 L.Ed. 412,[10] on the ground that Greenwood is limited in application to persons whose insanity is either temporary, or more than temporary, but less than permanent, and that as to those permanently insane the doctrine of Wells, by Gillig v. Attorney General of the United States, supra, remains in full force and effect [11].

This argument is more ingenious than plausible, and more plausible than realistically valid as applied to the case before us, when the similarity of proof and findings in the two cases and the essential rationale of the Supreme Court's decision are considered [12]. No finding negating the permanency of insanity having been made by the trial court in Greenwood, if any limitation to some twilight zone between permanent and temporary insanity had been intended by the Supreme Court it would be supposed that the case would have been remanded for a determination of this critical question. Such was the very purpose for which we considered it necessary to remand in Wells, by Gillig v. Attorney General of the United States, supra,

10. See also, D.C., 125 F.Supp. 777; 8 Cir., 219 F.2d 376.

11. For support of this theory appellant relies primarily upon the following quotations from Justice Frankfurter's opinion in Greenwood v. United States, supra.

"The fact that at present there may be little likelihood of recovery does not defeat federal power to make this initial commitment of the petitioner. We cannot say that federal authority to prosecute has now been irretrievably frustrated. * * *" 350 U.S. at page 375, 76 S. Ct. at page 415.

"We decide no more than the situation before us presents and equally do not imply an opinion on situations not now before us. * * *" Ibid., 350 U.S. at page 376, 76 S.Ct. at page 415.

12. The findings of ultimate fact in both cases are almost identical. In neither was it assumed to find that the insanity either was or was not permanent. In each case the evidence indicated remissions from time to time, but the necessity for indefinite hospitalization was similarly indicated. In Greenwood, the prognosis was reported to be poor; in the case of Royal, the psychiatrist declined to express a scientific opinion that the condition was permanent but ventured the conclusion that it was so from the standpoint of the law. The Supreme Court in Greenwood declined to be governed in this respect by any legalistic concept, saying: "The only certain thing that can be said about the present state of knowledge and therapy regarding mental disease is that science has not reached finality of judgment, even about a situation as unpromising as petitioner's, at least as indicated by the report of the United States Medical Center at Springfield. Certainly, denial of constitutional power of commitment to Congress in dealing with a situation like this ought not to rest on dogmatic adherence to one view or another on controversial psychiatric issues. * * *" 350 U.S. at pages 375–376, 76 S.Ct. at page 415. The circuit court decision in Greenwood, affirmed by the Supreme Court, referred to the prisoner, in stating the question to be determined, as one whose "insanity or mental incompetency is more than temporary and is or may be permanent." [219 F.2d 377]

when prior to Greenwood, we entertained the view that the Act was not intended to cover persons suffering from "permanent" insanity. And we suspect that the reason Mr. Justice Frankfurter referred to mental incompetence "more than temporary," rather than "permanent" insanity was not because it was intended to draw any consequential distinction between the two. The reasons seem rather a scientific reluctance, expressed in the opinion itself, to characterize any such condition by the latter term, and the legislative history of the Act which, as also recognized in the opinion, made the former rather than the latter characterization relevant [13]. Be this as it may, we are content to let stand the misgivings expressed by the majority of this court in Wells, by Gillig v. Attorney General of the United States, supra, concerning the application of the Act to persons clearly suffering from permanent insanity of such a nature that federal authority to prosecute would clearly be frustrated irretrievably; and we must be content, nonetheless, to be governed in our disposition of the present case by the decision in Greenwood which was decided on a situation which in all determinative aspects is substantially that presented here.[14] That we limit the effect of our decision here to the situation before us, without implying an opinion on any other situation, does not mean that we accord to the reasoning of Wells, by Gillig v. Attorney General of the United States, supra, any force as against the pronouncement of Greenwood, but only that we recognize the similar reservation expressed by the Supreme Court in the latter case.

■ It is argued by appellant that the meaning of the phrase to "the safety of the officers, the property or other interests of the United States," [15] relates to an insane person who is specifically dangerous to the United States and that otherwise all dangerous lunatics are subject to federal custody. At once it may be noted that this is not so, because by the very nature of the proceedings only those charged with federal offenses would fall within the ambit of these provisions. But appellant seeks to invoke the rule of *ejusdem generis* and argues that "other interests of the United States" must be narrowly construed to refer to its property or officers, citing in support of the general principle, Goldsmith v. United States, 2 Cir., 1930, 42 F.2d 133, 137. A related contention is that there must be an established predisposition to injure federal property, officers or interests rather than a general inclination to violate such interests in common with others. To bolster these arguments, reference is made to a comment by the circuit court in Greenwood v. United States, supra, that the prisoner "apparently has a penchant for robbing post offices and otherwise violating the law." [16]

We are of the opinion that the application of the statute is not limited necessarily to those who are likely to endanger only federal officers or federal property interests, as such, or to those who have a mania, or penchant for violating federal,

13. See the quotation from the report of the Committee of the Judicial Conference appearing in 350 U.S. at pages 373–374, 76 S.Ct. at page 414.

14. That the Supreme Court was not unaware of the conflict between the decision it was reviewing and which it affirmed and the contrary views of the majority in Wells is quite clear from the statement in Greenwood v. United States, supra, at page 373 of 350 U.S., at page 414 of 76 S.Ct., "Because of the important issue of federal power raised by the case and because of the conflicting views in the Courts of Appeals, compare

Higgins v. United States, 9 Cir., 205 F.2d 650, and Wells [by Gillig] v. Attorney General, 10 Cir., 201 F.2d 556, with the decision of the Court of Appeals for the Eighth Circuit in this case, we granted certiorari. 350 U.S. 821, 76 S.Ct. 89 [100 L.Ed. 733]."

15. 18 U.S.C. §§ 4247, 4248.

16. 219 F.2d 376, 387. In that case the defendant was charged with robbing a post office, and on at least two other occasions he had engaged in similar activity, but he had also been arrested for assault, robbery and forgery apparently not relating to federal property or officers.

as distinguished from state, law. To recognize such restriction would render superfluous the phrase "other interests of the United States" and would defeat, to a major extent, the expressed and apparent purpose of Congress as recognized in Greenwood. If only persons whose criminal inclinations were focused specifically against the property, officers or interests of the federal government were subject to detention when more than temporarily incompetent to stand trial, only a handful of those involved in the same procedures, and presenting essentially the same problem, would be subject to section 4246 in light of sections 4247 and 4248.[17] The expression "other interests of the United States" can be accorded meaning, and consistent with the doctrine *ejusdem generis*, by viewing it as relating to such interests as are not merely general and indirect, but are specific and primary. Promotion of the general welfare, protection of the peace and quiet of the community or the observance of local or state laws are of the former class. They comprise interests of the United States but not direct or primary ones. Yet, if interests are referred to other than the safety of federal officers and property as such, we must look for them outside the meaning of these terms, but in their context. There are, indeed, other interests of the federal government of the same direct and primary nature. These involve the enforcement of federal law. We, therefore, think that the probability of danger to the interests of the United States through violation of the laws it has primary responsibility for enforcing and through safeguarding of the rights it has the direct duty to protect also are intended to be covered.[18]

17. The courts apparently have not faced head-on certain equivocation, if not incongruity, in provisions of section 4246, on the one hand, and sections 4247–4248 on the other. The first mentioned section provides that if the trial court determines in accordance with sections 4244 and 4245 that an accused is mentally incompetent, it may commit him to the custody of the Attorney General "until [he] shall be mentally competent to stand trial or until the pending charges against him are disposed of according to law." It is only if the court goes further and determines that the conditions referred to in section 4247 also exist (that is, that if released the prisoner will probably endanger the safety of the officers, the property or other interests of the United States) that section 4248 comes into play prior to sentence. Unless these latter provisions are invoked, it would seem literally from the way the statute is drawn that the detention of the prisoner would be limited only by his becoming mentally competent to stand trial or by the disposition of the pending charges according to law. If they are invoked, then it would appear by the terms of the statute that he could be held until one of the conditions specified in section 4248 have arisen, notwithstanding the previous disposition of federal charges against the accused. This would involve difficulties which we need not here resolve. Does the language also indicate an intent to make it discretionary with the trial court to inquire into existence of the additional conditions referred to in section 4246 which would be prerequisite to the operation of section 4248; and if so, what would be the effect of the doctrine of Greenwood upon such cases as Higgins v. United States, 9 Cir., 1953, 205 F.2d 650, where the findings and order made no mention of the conditions specified in section 4247? In Royal's case, Judge Ridge, as noted above, held that a prior order of the district court of Kansas which made no reference to the conditions specified in section 4247 operated only as a temporary commitment for the purpose of observation, notwithstanding that in accordance with the first part of section 4246 Royal was committed until he should be mentally competent to stand trial or until the pending charges were disposed of according to law. Judge Ridge has achieved some expertise in this field being the trial judge in Greenwood, the Supreme Court's affirmance of which is not inconsistent with this view. Yet, since there is an express provision for temporary commitment in section 4244, and section 4246 is not couched in terms designed to accomplish the same purpose, the present wording of the statute is not entirely satisfactory and consideration could well be given for its clarification by Congress.

18. United States v. Gorobetz, D.C.N.J.1957, 156 F.Supp. 808 suggests that the determinative question is whether the de-

In this case, Royal already stood charged with the violation of a federal law, and the evidence permitted the inference that such offense as may have been committed by him stemmed from his mental incompetency. There also was evidence that if the defendant were released this mental condition would lead to other offenses which, even though not specially directed against federal officers or property, would constitute a threat to federally protected rights. Hence, it cannot be said that the trial court's finding that, if released, Royal will probably endanger the safety of the officers, the property, or other interests of the United States is not supported by substantial evidence or is clearly erroneous.

The final point sought to be made by the appellant is without merit. Whatever the interplay between the provisions of sections 4244 and 4246, and 4247 may be in other respects, it is clear that the requirement of the latter for appointment of a psychiatrist to be designated by the prisoner is only applicable in favor of one who already has been sentenced and whose sentence is about to expire; and that section 4244, under which Royal's hearing was properly held, contained no such mandatory provision either in terms or by reference. In support of this conclusion we barely resist citing the wag whom Mr. Justice Frankfurter quoted in Greenwood to indicate the desirability of recourse to the terms of the Act itself. The requested appointment was not mandatory. The lower court did not abuse its discretion in declining under the circumstances shown by the record to appoint an additional psychiatrist at the instance of the defendant.

Affirmed.

fendant would be a menace to himself or others if discharged. If he would not, his detention under section 4247 of course would not be justified and the case does not explore the question beyond this. Harrison v. Settle, D.C.W.D.Mo.W.D. 1957, 151 F.Supp. 372, 375, refers similarly to the question of whether the

prisoner represents "a danger to others". This also was, no doubt, intended, to indicate the periphery of any possible application of section 4247; but as a definitive standard for commitment provided therein, both of these expressions seem overly broad.