No. 81–53.   FLORIDA $v.$ GARRETT.   Dist. Ct. App. Fla., 3d Dist.   Motion of respondent for leave to proceed *in forma pauperis* granted.   Certiorari denied.

JUSTICE REHNQUIST, with whom THE CHIEF JUSTICE joins, dissenting.

In *Jackson* v. *Indiana*, 406 U. S. 715 (1972), this Court concluded that "on the record before us, Indiana cannot constitutionally commit the petitioner for an indefinite period simply on account of his incompetency to stand trial on the charges filed against him." *Id.*, at 720.   It went on to state:

> "Respondent argues, however, that because the record fails to establish affirmatively that Jackson will never improve, his commitment 'until sane' is not really an indeterminant one.   It is only temporary, pending possible change in his condition.   Thus, presumably, it cannot be judged against commitments under other state statutes that are truly indeterminant. . . .
>
> "Were the State's factual premise that Jackson's commitment is only temporary a valid one, this might well be a different case.   But the record does not support that premise." *Id.*, at 725.

The *Jackson* Court went on to discuss *Greenwood* v. *United States*, 350 U. S. 366 (1956), and held that it did not support Indiana's position, since it merely "upheld the Federal Government's constitutional authority to commit an individual found by the District Court to be 'insane,' incompetent to stand trial on outstanding criminal charges, and probably dangerous to the safety of the officers, property, or other interests of the United States." 406 U. S., at 726.

In the present case, the Florida District Court of Appeal reversed respondent's murder conviction on the ground that, prior to trial, he had been committed to a state hospital longer than necessary to assess the likelihood of his eventual

recovery of competency to stand trial. In my view, the decision rests on a serious misunderstanding of this Court's opinion in *Jackson, supra.* In light of the risk that the error will be repeated if not corrected, I would grant the petition.

On July 7, 1970, respondent was indicted for the first-degree murder of a police officer. He was arraigned and entered pleas of not guilty and not guilty by reason of insanity. Following a hearing on September 14, 1970, the trial court found respondent incompetent to stand trial and committed him to a state hospital. Three psychiatrists testified that respondent was suffering from paranoid schizophrenia and that episodes of the illness were likely to recur without intensive treatment. The psychiatrists also agreed that respondent posed a serious danger to himself and to others.[1]

Over the next six years, the trial court ordered periodic psychiatric examinations of respondent and conducted five hearings to reevaluate his competency to stand trial. In hindsight, the hearings reveal a recurrent pattern of behavior. While institutionalized, respondent received large doses of psychotropic medication, which, in the opinion of the examining psychiatrists, were successful in restoring his competency to stand trial. The trial court, however, apparently was of the view that it could not reach a valid determination of competency as long as respondent was under the influence of medication. This view was shared by respondent's counsel and by at least one of the examining psychiatrists. As a result, the court ordered withdrawal of medication and reevaluation. Typically, respondent severely regressed without medication. On the occasion of each reevaluation, the examining psychiatrists found respon-

---

[1] On October 7, 1970, respondent was also charged with second-degree arson. Following his arraignment on that charge, a second judge, relying on the decision of the first, also found respondent incompetent to stand trial and ordered him committed to the state hospital. Both cases later were assigned to a single judge.

dent both incompetent to stand trial and dangerous to himself and others. And on each such occasion, the trial court recommitted respondent to the state hospital.

A sixth competency hearing was held in November 1977. Psychiatric testimony again indicated that respondent, although under medication, was competent to stand trial. Defense counsel argued that respondent could not be considered competent because remission of his illness was the result of continuing psychotropic medication, which might affect respondent's ability to assist in the preparation of a defense. This time, however, the trial court found respondent competent to stand trial. Prior to the sixth competency hearing, Florida had enacted a statute that expressly permitted an adjudication of competency while under medication. 1977 Fla. Laws, ch. 77–312 (current version at Fla. Stat. § 916.12(2) (Supp. 1980)).

At this point, the tactics of the defense counsel and the reasoning of the Florida Court of Appeal diverged sharply from this Court's *Jackson* opinion. Defense counsel moved for dismissal of the indictment on the ground that respondent had been deprived of the right to a speedy trial secured by both state and federal law. Following denial of that motion and unsuccessful appellate proceedings in which he sought a writ of prohibition, respondent entered a plea of *nolo contendere*. An appeal followed in which respondent exclusively argued that he had been deprived of his state and federal rights to a speedy trial. The Florida District Court of Appeal reversed, but relied on *Jackson* v. *Indiana* to do so. 390 So. 2d 95 (1980).

In my view, the court's decision is not supported, much less compelled, by *Jackson* v. *Indiana*. The petitioner in that case challenged his indefinite confinement in a mental hospital pending his recovery of competency to stand trial. In addition to the statute under which petitioner was com-

mitted, Indiana had enacted two other laws authorizing the civil commitment of persons found to be mentally ill. Those statutes contained more demanding commitment standards and more lenient standards of release than the statute that authorized petitioner's commitment. This Court held that the unequal treatment of petitioner under the latter statute was not justified by the mere pendency of criminal charges against him. 406 U. S., at 729–730. As a matter of due process, the Court also held:

> "[A] person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant." *Id.*, at 738.

*Jackson*, therefore, recognized limits on the power of a State indefinitely to confine an accused "solely on account of his incapacity to proceed to trial." As the Court was aware, however, that holding does not address the power of the State to *try*, and thus to convict, the accused once he has regained competency to face the charges against him. See *id.*, at 739–740. It is foreseeable that once that time arrives, the defendant may allege that he has been deprived of the right to a speedy trial guaranteed by the Sixth and Fourteenth Amendments. The respondent in this case relied precisely, and exclusively, on such an argument in the District Court of Appeal. See Brief in Opposition 4. That court, however, reversed his conviction "on the basis that, under the holding of *Jackson* v. *Indiana*, . . . he should never have been brought to trial." 390 So. 2d, at 96. Since *Jackson* did not

address the power of the State to bring an accused to trial, it affords no basis for reversing respondent's conviction.[2]

The holding of the District Court of Appeal reflects other misconceptions about *Jackson* v. *Indiana*. *Jackson* turned largely on the contrast between Indiana's standards for commitment and release applicable to those committed solely because of their lack of capacity to stand trial and comparable standards governing civil commitment under two alternative state laws. The Court concluded that Jackson had been deprived of substantial rights to which he would have been entitled under either of the alternative commitment statutes. See 406 U. S., at 727–730. Moreover, there was serious doubt that Jackson could have been committed, or kept long in confinement once committed, if judged according to those statutes. *Ibid.* The District Court of Appeal undertook no similar comparison in respondent's case.

The result in *Jackson* also rested on due process grounds. The Court held that Indiana could not indefinitely confine an accused, "*solely* on account of his incapacity to proceed to trial," without determining the likelihood that he would regain competency. *Id.*, at 738 (emphasis added). Central to the result in *Jackson* was Indiana's complete failure to rely on any basis for committing the petitioner other than his incompetency to stand trial.[3] By way of contrast, the Court

---

[2] If *Jackson* had purported to limit the power of the State to try an accused because of an unlawful pretrial commitment, it would have marked a drastic departure from the "established rule that illegal arrest or detention does not void a subsequent conviction." *Gerstein* v. *Pugh*, 420 U. S. 103, 119 (1975).

[3] "The States have traditionally exercised broad power to commit persons found to be mentally ill. . . . The bases that have been articulated include dangerousness to self, dangerousness to others, and the need for care or treatment or training. . . .

". . . It is clear that Jackson's commitment rests on proceedings that did not purport to bring into play, indeed did not even consider relevant, *any*

recalled the decision in *Greenwood* v. *United States*, 350 U. S. 366 (1956), which upheld the pretrial commitment of a defendant under 18 U. S. C. §§ 4244 to 4246, "even though there was little likelihood that he would ever become competent to stand trial." 406 U. S., at 732. The Court noted that Greenwood, unlike Jackson, had been found not only incompetent, but dangerous. *Ibid.* In addition, Greenwood, unlike Jackson, was entitled to release when no longer dangerous. *Ibid.* As the Court's discussion of federal law made clear, the constitutionality of indefinite commitment. without an assessment of eventual capacity is dependent on the purposes for which commitment is ordered.

These distinctions apparently escaped the Florida District Court of Appeal in the instant case. Petitioner notes that every examination of respondent prior to the last, in November 1977, produced findings that respondent was not merely incompetent: he was extremely dangerous to himself and others and in need of treatment. Pet. for Cert. 3–16. Only the most careless reading of *Jackson* and its reference to *Greenwood*, *supra*, would render it controlling in such circumstances. *Jackson* dealt with the pretrial confinement of one accused of crime, and there is no solace to be gleaned from it of a federal constitutional due process limit on the authority of a State to confine an accused found dangerous to himself and others.

In opposition, respondent maintains that the opinion of the District Court of Appeal contains language "strongly suggest[ing] the likelihood that the court below's decision was based not on federal constitutional principles, but on for-

---

of the articulated bases for exercise of Indiana's power of indefinite commitment. . . . At the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Jackson* v. *Indiana*, 406 U. S., at 736–738 (footnote omitted).

mer Florida Rule of Criminal Procedure 3.210(a)(5)." Brief in Opposition 4. That Rule, which was in effect from 1972 to 1977, provided that a trial court which found no substantial probability that a defendant would become competent to stand trial was required to "adjudge the defendant not guilty by reason of insanity and forthwith direct the institution of civil proceedings for the commitment of the defendant." Although this Rule might have provided an adequate and independent state ground for reversing respondent's conviction, it is neither discussed nor cited in the court's decision and respondent concedes that he did not argue the Rule below. *Id.*, at 5. The Rule, in fact, had been repealed prior to the appeal of respondent's conviction, and his reliance on it in earlier competency hearings had proved consistently unavailing.[4]

The rationale of a court's decision usually is to be gleaned from the explanation given by the court. In this case, the explanation rests entirely on an erroneous interpretation of a decision by this Court. Rather than indulge in improbable speculation about what the court meant, as opposed to what it said, I would grant the petition for certiorari.[5]

---

[4] According to petitioner, respondent originally moved for an adjudication of insanity in reliance on the Rule at a competency hearing held in April 1973. Pet. for Cert. 7–8. The motion was denied and an appeal of the denial was subsequently dismissed. *Garrett* v. *State*, 283 So. 2d 905 (Fla. App. 1973). Respondent apparently renewed the motion at competency hearings in June 1974, December 1975, October 1976, and March 1977.

[5] Even if respondent's suggestions were sufficiently plausible to reveal ambiguities in the court's opinion, at most they would counsel this Court to grant the petition, vacate the judgment, and remand for reconsideration in light of *California* v. *Krivda*, 409 U. S. 33 (1972).