**Captain Leopold KLATT, Plaintiff–Appellant,**

v.

**UNITED STATES of America; U.S. Coast Guard, Defendants– Appellees.**

**No. 91–15598.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 17, 1992.

Decided May 26, 1992.

Norman J. Ronneberg, Jr., Rice, Fowler, Kingsmill, Vance, Flint & Booth, San Francisco, Cal., for plaintiff-appellant.

Robert D. Kamenshine, U.S. Dept. of Justice, Washington, D.C., for defendants-appellees.

Before SCHROEDER, LEAVY and RYMER, Circuit Judges.

RYMER, Circuit Judge:

Captain Leopold Klatt was master of a vessel which discharged several gallons of oil while moored at Amorco Wharf in Martinez, California. Although he was without fault, the Coast Guard sought to revoke or suspend Klatt's license under 46 U.S.C. § 7703, which provides for suspension or revocation of a mariner's license if the holder violates or fails to comply with any law intended to protect navigable waters, on the ground that he was the person in charge of a vessel which discharged oil in violation of the Clean Water Act, 33 U.S.C. § 1321. Section 1321 prohibits discharge of oil into navigable waters, and subjects the person in charge of any vessel from which oil is discharged to civil penalties on the basis of strict liability. After an administrative hearing, Klatt was admonished for "his" violation and an admonition was placed in his Coast Guard file.

Klatt claims that the admonition without wrongdoing deprives him of substantive due process and that in any event, the Coast Guard misinterpreted § 7703 because revocation of a license cannot be based on breach of a no-fault statute. The district court dismissed his complaint for lack of ripeness. The government concedes that Klatt's statutory claim is ripe for review and, because the admonition permanently blemishes the licensee's record, we agree. On the merits, we hold that a master's license is not subject to revocation or suspension under § 7703 unless the master, not just the vessel, violates a provision of the Clean Water Act.[1]

I

After the S.S. COVE LIBERTY, then moored in the navigable waters of the Unit-ed States at Amorco Wharf in Martinez, California, had discharged its cargo and had begun taking on water ballast as part of undocking procedures, an oil sheen appeared on the water. Klatt was master of the COVE LIBERTY. Within five minutes, Klatt instructed the vessel's agent to notify the Coast Guard. The vessel's agent arranged for immediate cleanup of the oil, to the Coast Guard's satisfaction. There was no damage to the marine environment, and it was estimated that only two to five gallons of oil had been spilled. Klatt did not know how the spill occurred.

Klatt was served with a charge of Violation of Law supported by a single specification:

In that you, while serving as Master aboard Cove Liberty, under authority of the captioned documents, did on or about 1515, 11 March 1988 discharge oil from your vessel into Carquinez Strait while undocking from the Amorco Wharf, Martinez, CA in violation of 33 U.S.C. 1321.

A hearing was held before an Administrative Law Judge, who found no negligence but concluded that none was required since Klatt was charged only with a violation of law, specifically the provision of the Clean Water Act, 33 U.S.C. § 1321, prohibiting discharge of oil into navigable waters. The ALJ held that the charge was proved when the Coast Guard established the occurrence of the spill. In light of Klatt's exemplary record and the small amount of oil that was spilled, the ALJ declined to revoke or suspend Klatt's master's license but instead ordered that an admonition be placed in his personnel record.

On appeal, the Vice Commandant rejected Klatt's claim that the civil penalty provisions of § 1321 do not impose strict liability on the master for purposes of suspension or revocation proceedings. He agreed with the ALJ that under 46 U.S.C. § 7703, the Coast Guard simply needed to establish a violation of law, and that no causal link is

---

1. Because we conclude that the Coast Guard erred in its interpretation of § 7703, we do not reach Klatt's constitutional argument.

required between the master and the discharge. The National Transportation Safety Board dismissed Klatt's appeal for lack of jurisdiction.[2]

Because the district court concluded that Klatt's case was not ripe for adjudication, it did not address the merits of his claim that a no-fault violation of the Clean Water Act cannot form the basis of a Coast Guard action against a mariner's license. Both sides agree that this point raises purely a legal issue, which we may properly resolve if the case is ripe.

## II

■ We are satisfied that Klatt's statutory claim is ripe for review.[3] Klatt was "admonished for his Violation of Law in that oil was discharged from his vessel." The admonition was placed in Klatt's personnel record at Coast Guard headquarters. It may be considered in future disciplinary proceedings, and may adversely affect his future employment prospects. The government concedes ripeness of this claim, but argues that it is so insubstantial we should nevertheless decline to review it. We disagree.

In *Miller v. Washington State Bar Association*, 679 F.2d 1313 (9th Cir.1982), we concluded that a letter of admonition in an attorney's file had a sufficiently adverse effect to give rise to a justiciable controversy. The State Bar had issued a nonpublic letter of reprimand. We observed that even though it may not have amounted to a finding of misconduct, the reprimand was an expression of adverse opinion by the disciplinary arm of the State Bar and was aimed at deterring similar conduct in the future. *Id.* at 1317. Like the admonition in Klatt's case, the reprimand became part of the attorney's permanent record, would have to be explained in applications to the bars of other states and for judicial appointments, and would be considered in subsequent disciplinary proceedings. As we held in *Miller*, "[w]e are unable to agree that a person seeking review of such an admonition in federal court has no controversy with the admonishing authority." *Id.* at 1318; *see also Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985); *In re Primus*, 436 U.S. 412, 421, 98 S.Ct. 1893, 1899, 56 L.Ed.2d 417 (1978) (reprimand of attorneys constituted justiciable injury).

## III

■ 46 U.S.C. § 7703 governs suspension or revocation of a master's license. It states:

A license, certificate of registry, or merchant mariner's document issued by the Secretary may be suspended or revoked if the holder—

(1) when acting under the authority of that license, certificate, or document—

(A) has violated or fails to comply with this subtitle, a regulation prescribed under this subtitle, or any other law or regulation intended to promote marine safety or to protect navigable waters; or

(B) has committed an act of incompetence, misconduct, or negligence;

. . . . .

The Coast Guard proceeded against Klatt's license on the theory that he was "the holder" of the license and was therefore subject to discipline for violation of "any other law ... intended to promote marine safety or to protect navigable waters." 46 U.S.C. § 7703(1)(A). The "other law" in this case is the Clean Water Act, 33 U.S.C. § 1321(b)(3). Section 1321(b)(3) provides that "[t]he discharge of oil or hazardous substances (i) into or upon the naviga-

---

2. The NTSB held that it could not entertain appeals from orders of admonition because they are not listed among those orders that 49 U.S.C. § 1903(a)(9) specifically authorizes it to review. The correctness of that ruling is not before us.

3. Given our disposition on this claim, we do not consider whether Klatt's constitutional issues are also ripe.

ble waters of the United States ... is prohibited...." Section 1321(b)(6)(A), in turn, authorizes a civil penalty against any owner, operator, or "person in charge of any vessel ... from which oil ... is discharged." 33 U.S.C. § 1321(b)(6)(A).

Because Klatt was a "person in charge" of the COVE LIBERTY, the Coast Guard argues that the plain language of § 7703 authorizes it to admonish Klatt for his ship's discharge of oil. We read it differently.

Section 7703 authorizes proceedings against a license when *the holder* violates or fails to comply with a law. There is no finding that Klatt violated any law. The *only finding here is that the vessel* discharged oil, which a vessel may not do without running afoul of § 1321. While it is true that Klatt, along with the owner, is subject to a civil penalty on a no-fault basis for that occurrence, nothing in either statute puts a master's license in jeopardy unless *he* does something that violates, or fails to comply with, the law.

The Coast Guard argues that there is nothing in the words "any law" to suggest that § 7703(1)(A) includes only some laws, those which require proof of negligence, and excludes others, those which impose strict liability. The Coast Guard reinforces its reading of § 7703(1)(A) by contrasting subsection (1)(A) with (1)(B), which authorizes discipline where the licensee "has committed an act of incompetence, misconduct, or negligence." [4]

While § 7703(1)(A) does not limit the laws for whose violation a license may be charged (so long as they pertain to marine safety or protect navigable waters), neither does it incorporate the degree of culpability that Congress may have attached to "other" laws for different purposes. It is one thing to impose a fine on those who own or operate or are in charge of a vessel without fault, because the statute plainly says to do so, but another to engraft that standard on a licensing statute which says that "the holder" must violate a law. In the absence of a specific directive by Congress that the holder of a license is strictly accountable for whatever his vessel does that violates a law, whether he has violated that law or not, we decline to rewrite § 7703(1)(A).

Because we read the text of § 7703 as applying when the master, not the vessel, violates a law, there is no call to resort to legislative history. Both sides, in any event, agree that there is none that bears on the question of whether § 7703(1)(A) puts a license at risk on a no-fault or no-cause basis. Rather, the Coast Guard argues that such history as there is indicates that Congress intended that the statute's literal language should control.[5] Evidently it would have us apply part of the literal language of § *1321* ("any person in charge of any vessel ... from which oil ... is discharged") in construing who "the holder" is, and that person's being subject to a civil penalty without fault under § 1321 in construing what "other law" "the holder ... has violated," for purposes of § *7703*. We go instead with § 7703.[6] It does not

---

**4.** To the extent the Coast Guard argues that Klatt's reading of subsection (1)(A) renders (1)(B) superfluous, we disagree. Klatt's obligation under § 1321 is to pay a fine if the vessel he is in charge of discharges oil. If he does not do so, no doubt his license could be charged under subsection (1)(A) for failing to comply.

**5.** For example, responding to Klatt's reliance on the introduction to the legislative history of § 7703, which states that changes made in 1983 were "minor changes, adjustments, or modifications, or they are more significant changes to which the Committee received no objection and which the Committee believed would enhance the clarity and effectiveness of the law and the generally accepted [sic] by the industry," to ar-

gue that changes such as the addition of the language "violation ... of any other law" were not intended to effect the kind of major substantive change that basing licence revocation on strict liability statutes would do, the Coast Guard points to a portion of the House report which states that the committee "feels, as the courts have held, that the literal language of the statute should control the disposition of the case." H.R. No. 98–338, 98th Cong. 1st Sess. 120, *reprinted in* 1983 U.S.C.C.A.N. 924, 932.

**6.** "[T]his is a case for applying the canon of construction of the wag who said, when the legislative history is doubtful, go with the statute." *Greenwood v. United States*, 350 U.S. 366, 374, 76 S.Ct. 410, 415, 100 L.Ed. 412 (1956).

say that a license may be suspended or revoked for violations of a law that the holder of the license does not commit.

The Coast Guard also urges us to defer to its interpretation of § 7703 because it is the agency charged with enforcing licensing provisions and was the architect of the maritime safety legislation enacted by the 98th Congress. We recognize our obligation to do so if Congress has not spoken directly to the issue, *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984), but we think it spoke directly when it wrote a statute saying that the license holder, in this case Klatt, may lose his license if *he* has violated or failed to comply with any applicable law.

■ We conclude that charges against Klatt's license were not well founded under § 7703 in the absence of an accusation or finding that he, as the holder of a mariner's license, violated any provision of the Clean Water Act. Accordingly, we reverse and remand to the district court with instructions to order that the admonition placed in Klatt's personnel file be expunged.

REVERSED AND REMANDED.