Justice Alito,
concurring in the judgment.
I am concerned about the breadth of the Court’s language, see ante, at 151-153 (Kennedy, J., concurring in judgment), and the ambiguity of the standard that the Court applies, see post, at 166 (Thomas, J., dissenting), but I am persuaded, on narrow grounds, that it was “necessary and proper” for Congress to enact the statute at issue in this case, 18 U. S. C. §4248, in order to “carr[y] into Execution” powers specifically conferred on Congress by the Constitution, see Art. I, §8, cl. 18.
Section 4248 was enacted to protect the public from federal prisoners who suffer from “a serious mental illness, abnormality, or disorder” and who, if released, would have “serious difficulty in refraining from sexually violent conduct or child molestation.” See §§4247(a)(5), (6), 4248(d). Under *156 this law, if neither the State of a prisoner’s domicile nor the State in which the prisoner was tried will assume the responsibility for the prisoner's “custody, care, and treatment,” the Federal Government is authorized to undertake that responsibility. § 4248(d). The statute recognizes that, in many cases, no State will assume the heavy financial burden of civilly committing a dangerous federal prisoner who, as a result of lengthy federal incarceration, no longer has any substantial ties to any State.
I entirely agree with the dissent that “[t]he Necessary and Proper Clause empowers Congress to enact only those laws that ‘carr[y] into Execution’ one or more of the federal powers enumerated in the Constitution,” post, at 159, but §4248 satisfies that requirement because it is a necessary and proper means of carrying into execution the enumerated powers that support the federal criminal statutes under which the affected prisoners were convicted. The Necessary and Proper Clause provides the constitutional authority for most federal criminal statutes. In other words, most federal criminal statutes rest upon a congressional judgment that, in order to execute one or more of the powers conferred on Congress, it is necessary and proper to criminalize certain conduct, and in order to do that it is obviously necessary and proper to provide for the operation of a federal criminal justice system and a federal prison system.
All of this has been recognized since the beginning of our country. The First Congress enacted federal criminal laws,[1] created federal law enforcement and prosecutorial positions,[2] *157 established a federal court system,[3] provided for the imprisonment of persons convicted of federal crimes,[4] and gave United States marshals the responsibility of securing federal prisoners.[5]
The only additional question presented here is whether, in order to carry into execution the enumerated powers on which the federal criminal laws rest, it is also necessary and proper for Congress to protect the public from dangers created by the federal criminal justice and prison systems. In my view, the answer to that question is “yes.” Just as it is necessary and proper for Congress to provide for the apprehension of escaped federal prisoners, it is necessary and proper for Congress to provide for the civil commitment of dangerous federal prisoners who would otherwise escape civil commitment as a result of federal imprisonment.
Some years ago, a distinguished study group created by the Judicial Conference of the United States found that, in a *158 disturbing number of cases, no State was willing to assume the financial burden of providing for the civil commitment of federal prisoners who, if left at large after the completion of their sentences, would present a danger to any communities in which they chose to live or visit. See ante, at 138-139; Greenwood v. United States, 350 U. S. 366, 373-374 (1956). These federal prisoners, having been held for years in a federal prison, often had few ties to any State; it was a matter of speculation where they would choose to go upon release; and accordingly no State was enthusiastic about volunteering to shoulder the burden of civil commitment.
The Necessary and Proper Clause does not give Congress carte blanche. Although the term “necessary” does not mean “absolutely necessary” or indispensable, the term requires an “appropriate” link between a power conferred by the Constitution and the law enacted by Congress. See McCulloch v. Maryland, 4 Wheat. 316, 415 (1819). And it is an obligation of this Court to enforce compliance with that limitation. Id., at 423.
The law in question here satisfies that requirement. This is not a case in which it is merely possible for a court to think of a rational basis on which Congress might have perceived an attenuated link between the powers underlying the federal criminal statutes and the challenged civil commitment provision. Here, there is a substantial link to Congress’ constitutional powers.
For this reason, I concur in the judgment that Congress had the constitutional authority to enact 18 U. S. C. §4248.

 See, e. g., ch. 9, 1 Stat. 112 (“An Act for the Punishment of certain Crimes against the United States”).

 §35, id., at 92 (“[Tjhere shall be appointed in each district a meet person learned in the law to act as attorney for the United States in such district,... whose duty it shall be to prosecute in such district all delinquents for crimes and offences, cognizable under the authority of the United States”).

 § 1, id., at 73 (“An Act to establish the Judicial Courts of the United States”).

 See, e.g., §9, id., at 76-77 (providing that the federal district courts shall have exclusive jurisdiction over "all crimes and offences that shall be cognizable under the authority of the United States, . . . where no other punishment than whipping, not exceeding thirty stripes, a fine not exceeding one hundred dollars, or a term of imprisonment not exceeding six months, is to be inflicted”); see also J. Roberts, The Federal Bureau of
Prisons: Its Mission, Its History, and Its Partnership With Probation and Pretrial Services, 61 Fed. Probation 53 (1997) (explaining that federal prisoners were originally housed in state and county facilities on a contract basis).

 See §27, 1 Stat. 87 (“[A] marshal shall be appointed in and for each district for the term of four years,... whose duty it shall be to attend the district and circuit courts when sitting therein, . . . [a]nd to execute throughout the district, all lawful precepts directed to him, and issued under the authority of the United States”); §28, id,., at 88 (“[T]he marshal shall be held answerable for the delivery to his successor of all prisoners which may be in his custody at the time of his removal, or when the term for which he is appointed shall expire, and for that purpose may retain such prisoners in his custody until his successor shall be appointed and qualified as the law directs”).