Raymond R. FRYE, Petitioner,

v.

Dr. R. O. SETTLE, Warden, United States Medical Center for Federal Prisoners, Springfield, Missouri, Respondent.

No. 12078.

United States District Court
W. D. Missouri, W. D.
Nov. 28, 1958.

Raymond R. Frye, petitioner, pro se.

Edward L. Scheufler, U. S. Atty., Joseph L. Flynn, Asst. U. S. Atty., Kansas City, Mo., for respondent.

RIDGE, District Judge.

Under Chapter 313, Title 18 U.S.C.A., mentally incompetent persons, arrested for a federal offense, who are unable to understand the nature of the accusation made against them, may be committed to the custody of the Attorney General of the United States until they are capable of standing trial, or the charge made against them is otherwise disposed of according to law. Petitioner, now confined in the United States Medical Center for Federal Prisoners, at Springfield, Missouri, has been found to be one such person. He has filed petition for writ of habeas corpus, seeking to be released from custody, and the consequences of a commitment issued pursuant to Section 4246 of Title 18 U.S.C.A. Giving his pleadings a liberal construction, as we are admonished to do, (Rice v. Olson, 324 U.S. 786–791, 65 S.Ct. 989, 89 L.Ed. 1367) his claim of right to such a writ presents a matter in criminal procedure that could have dire consequences, if petitioner is hereafter tried and sentenced on the charge presently pending against him in his committing court. Because the circumstances found in petitioner's claim are recurringly being presented to this Court in habeas corpus proceedings, it is deemed prudent to call the factual situation involved to the attention of our Brethren of the Bench and Bar, and particularly United States District Attorneys.

February 4, 1958, a complaint was filed before the Commissioner of the United States District Court for the Western District of Oklahoma, charging petitioner with violation of Section 2312, Title 18 United States Code. A warrant for his arrest was duly issued. He was arrested in the Northern District of Texas. On order of the United States District Court for that District, petitioner was removed to Oklahoma City, where he was

taken before the United States District Court for the Western District of Oklahoma. At his appearance before the latter-mentioned Court, on March 3, 1958, petitioner, represented by counsel, (presumably court-appointed) executed a waiver of indictment. Thereupon, an information was filed against him, charging him with violation of Section 2312, supra. On arraignment to that information, a plea of not guilty was entered. Two days later, on March 5, 1958, counsel for petitioner filed a "motion to transfer prisoner to hospital," as provided in Section 4244, Title 18 U.S.C.A. April 11, 1958, a hearing was held on said motion. The District Court found "that a physical and mental examination should be made of said (petitioner) to determine whether or not he is insane, or understands the consequences of his act, or knows right from wrong and fully understands the proceedings against him in order to be of adequate assistance in his defense." After so concluding, the Court directed that petitioner be confined in the Medical Center, supra, "for such period of time as is required by the said Medical Center in order to complete a physical and mental examination of this (petitioner), said period not to exceed ninety (90) days, so that such physical and mental examination can be made by competent physicians and psychiatrists." Petitioner was accordingly committed to the custody of the respondent.

A neuro-psychiatric examination of petitioner was made by the N-P Staff at the Medical Center. On May 29, 1958, the Staff reported to petitioner's committing court, in part as follows:

"Subject must be regarded as mentally incompetent in that he is unable to appreciate the nature of the proceedings pending against him and is unable to properly assist counsel in his defense."

Subsequently thereto, petitioner was returned to the jurisdiction of the United States District Court for the Western District of Oklahoma. On July 21, 1958, that Court held another hearing in respect to petitioner's mental competency and thereafter entered the following order:

"Now, on this 21st day of July, 1958, this matter comes on for hearing on application heretofore filed by the defendant, Raymond Roy Frye, by and through his attorney, Al Hoch, to determine the present sanity or competency of the defendant and to determine whether or not the defendant is able to understand the proceedings against him, or to assist in the defense of his case, and the defendant being present in person and with his attorney, and the United States being represented by its attorney, Assistant United States Attorney Philip R. Douglas, and the Court having received in evidence the report of a neuropsychiatric examination by Dr. Louis Moreau, a Staff Psychiatrist of the Federal Medical Center, Springfield, Missouri, said report being concurred in by Doctors Rinck, Rinsley, Anderson, and Bergel of said Medical Center, and being offered as evidence by the defendant through his attorney, and the Court being fully advised in the premises, finds:

"That the defendant, Raymond Roy Frye, is presently under such a mental disability so as to be mentally incompetent and unable to understand the proceedings against him or to properly assist in his own defense and that such mental disability is of a temporary nature.

"It Is Therefore Ordered by the Court that the defendant, Raymond Roy Frye, be kept in the custody of the Attorney General of the United States until such time as the Court has before it competent psychiatric evidence showing the temporary disability no longer exists."

Petitioner now contends that the procedure followed in the United States District Court for the Western District of Oklahoma, and the order of that Court under which he is now confined in the Medical Center are null and void "because of prosecution's failure to comply

with 'constitutional rules of due process'." Petitioner's claim of denial of due process is two-fold and premised in the proposition that though he was physically present before such Court he was mentally absent and as a consequence thereof he did not "know what he was doing, when he executed a waiver of indictment." He presents this query: "If an insane man is mentally incompetent to stand trial, how may he waive his right to indictment on a charge made against him?"

The due process that was not complied with, as petitioner apparently conceives it, is that after his arrest and when he was first brought within the jurisdiction of the United States District Court for the Western District of Oklahoma, he was not taken before the United States Commissioner of that District. He asserts that if he had been taken before such Commissioner, "it would have been mandatory, as a result of a hearing before the Commissioner, for a 'mental determination' to be had, prior to the time" he was requested to execute a waiver of indictment in the District Court. Apparently, petitioner is of the opinion that had such a determination been made by the United States Commissioner, no charge would have been lodged against him in the above District Court.

 Petitioner's contention of denial of "due process", because he was not taken before a United States Commissioner for a hearing as to his mental competency, before his appearance in the United States District Court, is patently without merit and does not militate against the validity of his commitment to the Medical Center pursuant to the provisions of Chapter 313, Title 18 U.S. C. Petitioner, when first committed to the Medical Center, was then under arrest, charged by *complaint* with a federal offense. The venue of the offense for which he was arrested was within the jurisdiction of the United States District Court for the Western District of Oklahoma. Section 4244, supra, vests jurisdiction in the United States District Courts, and not in United States Commissioners, to inquire into the mental competency of a person charged with a federal offense "after arrest" and before trial, and provides for their commitment "for such reasonable period as the court may determine to a suitable hospital or other facility to be designated by the court," for the purpose of examination as to his mental competency. The power of a United States District Court to so proceed against an "arrested" accused under said section is not impaired by the manner in which he is brought before the Court having jurisdiction of the crime for which he is arrested. The Court having jurisdiction of the subject matter of such crime, the appearance of the accused before that Court gives it jurisdiction to proceed under said section, regardless of how the accused was brought into the presence of the Court. A court of criminal jurisdiction is not required to inquire as to how the prisoner came within reach of its mandates. The presence of the accused in court on a proper charge is sufficient to confer jurisdiction of his person, even though he was arrested contrary to law. Frisbie v. Collins, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541; Albrecht v. United States, 273 U.S. 1, 47 S.Ct. 250, 71 L.Ed. 505; Ker v. Illinois, 119 U.S. 436, 437, 7 S.Ct. 225, 30 L.Ed. 421; Bistram v. United States, 8 Cir., 253 F.2d 610; United States ex rel. Sproch v. Ragen, 7 Cir., 246 F.2d 264. Therefore, petitioner's contention that he was denied due process of law because he was not taken before a United States Commissioner before his appearance in the United States District Court for the Western District of Oklahoma, is denied.

But petitioner also contends that the subsequent proceedings against him in that District Court, after he was first committed to the Medical Center, are null and void. As to that matter, petitioner contends that the jurisdiction of that Court was then premised on an *Information* which was filed against him in violation of "all concepts of due proc-

ess of law." It is that contention of petitioner which gives us some concern.

After petitioner was first committed to the Medical Center it was determined by the Neuro-Psychiatric Staff of that institution that petitioner was "mentally incompetent in that he is unable to appreciate the nature of the proceedings pending against him and (was) unable to properly assist counsel in his defense." Petitioner was thereafter returned to his committing court. A copy of the report of the Staff Psychiatrist who examined the petitioner in the Medical Center, which was forwarded to petitioner's committing court, contains the following statement:

"During his present commitment here he has an apparent amnesia for details of the instant offense and has manifested confusion, disorientation, inappropriate affect, hostility, withdrawal, and markedly impaired judgment and insight."

The diagnosis made of petitioner was, that he was suffering from:

"Schizophrenic reaction, chronic undifferentiated type with catatonic and paranoid features, as manifested by memory defect, confusion, disorientation, markedly impaired judgment and insight, impaired conceptual thinking, emotional flatness, autistic and unrealistic thinking, and a long history of social inadequacy."

On July 21, 1958, petitioner's committing court held a second hearing under Sections 4244 and 4246, Title 18 U.S.C.A. After that hearing, petitioner was recommitted to the "custody of the Attorney General of the United States until such time as the Court has before it competent psychiatric evidence showing the temporary disability no longer exists." It is by virtue of that order of commitment that petitioner is now confined in the Medical Center. Manifestly, the order so entered by petitioner's committing court was intended to be made under Section 4246, supra, which permits the commitment of an "accused to the custody of the Attorney General or his authorized representative, until the accused shall be mentally competent to *stand trial* or until the *pending charges* against him are disposed of according to law."

Petitioner contends that the only charge pending against him in his committing court at the time of the entry of the order of July 21, 1958, was that contained in the *information* filed against him as a consequence of the waiver of indictment, executed by him under circumstances as above mentioned. Commencing from that premise, he asserts if it be true that at the time of his arrest, and on May 29, 1958, he was mentally defective, as found by the Neuro-Psychiatric Staff of the Medical Center, then he was not mentally competent to execute a waiver of indictment on March 3, 1958, so as to vest his committing court with the jurisdiction to proceed with any criminal charge made against him in that court *by way of information*; that the jurisdiction obtained as a result of his waiver of indictment and the filing of an information had to depend upon his competent understanding of the nature of the charge made against him and of his constitutional rights; therefore, he asserts the finding and order entered by the District Court on the 21st day of July, 1958, recommitting him to the Medical Center, as hereinabove mentioned, is null and void, for denial of due process of law, because it is thereby established as a fact that he was mentally incompetent to waive indictment; hence he claims he is now entitled to be released from further custody under the last-above-mentioned order of commitment.

■■ It is axiomatic in criminal procedure that "there can be no conviction or punishment of a crime without a formal and sufficient accusation. The court can acquire no jurisdiction "to try a person for a criminal offense unless he has been charged with the commission of the particular offense and charged in the particular form and mode required by law. If that is wanting, his trial and conviction is a nullity, for no person can be

deprived of either life, liberty, or property without due process of law. The forms or modes of accusation which the law recognizes are: Indictment or presentment by a grand jury; and information by the public prosecutor." Weeks v. United States, 2 Cir., 216 F. 292, 293, L.R.A.1915B, 651; cf. United States v. Simon, D.C.Pa., 248 F. 980. In modern federal criminal procedure, the modes for bringing a defendant to trial for a felony within due process of law, are: (1) The constitutional provision of the Fifth Amendment to the Constitution of the United States; and (2) as provided in Rule 7(a), Federal Rules of Criminal Procedure, 18 U.S.C.A. The first is, of course, by indictment of a grand jury; and the second, by waiver of indictment and consent to the filing of an information. Who can gainsay that an insane person cannot waive indictment and give legal consent to be proceeded against under the latter mode.

██ But, by Section 4244, Title 18 U.S.C.A., the mere "arrest" of a mentally defective accused is sufficient to vest a District Court with jurisdiction to proceed against the person of such accused for at least a reasonable period of time. Said section makes it mandatory upon the United States District Attorneys to inform a District Court that there is "reasonable cause to believe that a person charged with an offense against the United States may be presently insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense." "A similar motion" may be made "in behalf of the accused." When a motion is so lodged with the District Court having jurisdiction of the crime with which the mentally defective is accused, that court may proceed to hold a hearing thereon and enter an order of commitment as provided in said section, commanding that the accused be committed "for such reasonable period as the court may determine" for the purpose of a mental examination. § 4244, T. 18 U.S.C.A.

Seemingly, the procedure contemplated by Chapter 313, supra, is that after an accused has been temporarily committed under Section 4244, supra, he should thereafter be again brought before the court in which the "charge" is pending against him. That court should then make a determination as to whether the accused is competent to stand trial, or should thereafter be re-committed under Section 4246, or some other section in Chapter 313, supra. If the former determination is made, then a formal order to that effect must be so entered (cf. Gunther v. United States, 94 U.S.App. D.C. 243 215 F.2d 493); if the latter conclusion is reached, then the court is required to proceed as provided in said chapter.

Apparently, it was not the intent of the Congress nor the sponsors of Chapter 313 of the Criminal Code, supra, that by the mere "arrest" of a mentally defective person, a United States District Court should undertake to proceed against such an accused otherwise than as provided in Section 4244 thereof. The legislative history (Hearing before Senate Sub-Committee on the Judiciary, S. 850, 80 Cong. 2d Sess., and Sen.Report 209, April 4, 1949, 81st Cong. 1st Sess. 1949, U.S.Code Cong.Service 1949, p. 1928) and proper interpretation to be given to the provisions of Chapter 313, in the light of recognized criminal procedure make that proposition manifest.

██ Therefore, "due process of law" under a Chapter 313 proceeding seemingly requires that sometime after the "arrest" of a mentally defective person, an indictment by a grand jury of the accused should be sought. Consequently, during the period of time that a mentally defective accused is *temporarily* confined, proper criminal procedure would dictate that the matter of his accusation be submitted by the District Attorney for consideration of a grand jury. If an indictment be returned, then when such an accused is returned to his committing court and remains mentally incompetent, there could be no question as to a District Court's jurisdiction to proceed in the

**14**

premises. Of course, "It is fundamental that an insane person can neither plead to an arraignment, be subjected to trial, or, after trial, receive judgment, or, after judgment, undergo punishment." Youtsey v. United States, 6 Cir., 97 F. 937, 940. All such prosecutable proceedings against him must stop "pending the prisoner's recovery and, until he does recover, the prisoner may be remanded to an asylum or other proper form of restraint." Forthoffer v. Swope, 9 Cir., 103 F.2d 707, 709. Due process of law does not militate against the indictment of a mentally defective accused, even though no further proceedings can be had against him on the indictment. 38 C.J.S. Grand Juries § 34 p. 1027. Such procedure taken in respect to mentally defective persons until they are "mentally competent to stand trial or until the pending charges against (them) are disposed of according to law," is within the ambit of the ruling made by the Supreme Court of the United States in Greenwood v. United States, 350 U.S. 366, 76 S.Ct. 410, 411, 100 L.Ed. 412.

In the case at bar the above procedure was not followed in petitioner's committing court. The question thereby presented is whether petitioner is now entitled to be released from the Medical Center by way of habeas corpus for denial of "due process of law." We do not think so, for the following reasons. From his "rebuttal to response to order to show cause," it appears that petitioner does not contend that he is presently sane, or mentally competent to stand trial on any charge that may be filed against him in the United States District Court for the Western District of Oklahoma. On the contrary, he states, "He feels that he does need mental treatment * * * But not in a prison hospital, under prison discipline" and that "it should be his legal right to have treatment in a United States Veterans Hospital and * * * not be imprisoned in the * * * Medical Center." Rebuttal, supra. So long as petitioner remains mentally incompetent to stand trial on any charge that may be filed

against him in his committing court, he has no right to be released from his present custody by this Court through habeas corpus proceedings. The Congress has established the United States Medical Center for Federal Prisoners, at Springfield, Missouri, as the institution in which those arrested for federal offenses, as well as others, may be confined and treated when they are found to be mentally defective. Said institution is not a "federal prison" within the scheme of federal penal institutions but is a hospital established by the Congress for treatment of persons found to have committed federal offenses. Rosheisen v. Steele, Warden, 8 Cir., 193 F.2d 273. A commitment to that institution under Chapter 313, after arrest and before arraignment, trial and sentence for a federal offense is not a denial of due process of law.

Furthermore, "due process of law" does not go so far as to make petitioner's confinement illegal where the only claim of illegality relates to error in procedure that does not go to the jurisdiction of his committing court. Due process only requires a fair hearing before a tribunal having jurisdiction to hear and decide an issue. Petitioner bears a relation to his committing court of a person accused of an offense against the laws of the United States. He makes no claim of unfairness in the hearing afforded him on that issue. "In all cases that kind of procedure is due process of law which is suitable and proper to the nature of the case, and sanctioned by the established custom and usages of the courts." Ex parte Wall, 107 U.S. 265, 289, 2 S.Ct. 569, 589, 27 L.Ed. 552. "A trial of the question of present insanity is not a trial of an indictment but is preliminary to such trial, and the object is simply to determine whether the person charged with an offense and alleged to be insane shall be required to plead and proceed to trial of the main issue of guilty or not guilty." 14 Am.Jur., p. 802. There can be no question that Congress has the power to enact laws for the arrest and commitment of mentally de-

fective persons accused of offenses against the laws of the United States, and hold them in safe custody until indictment and trial on such a charge. Greenwood v. United States, supra; Ableman v. Booth, 21 How. 506, 62 U.S. 506, 16 L.Ed. 169; Logan v. United States, 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429; Robb v. Connolly, 111 U.S. 624, 4 S.Ct. 544, 28 L.Ed. 542.

The fact that the waiver of indictment and information filed in the United States District Court for the Western District of Oklahoma may be legally insufficient to premise a trial or sentence of petitioner thereon, and no indictment has presently been returned against him, does not make his present confinement in the Medical Center constitutionally illegal. An indictment may be returned against petitioner at any time within five years of the time of the commission of the offense for which he was arrested. § 3282, Title 18 U.S.C.A.

But petitioner, as an accused person, has the constitutional right to presently know whether the United States District Attorney for the Western District of Oklahoma intends to obtain such an indictment of him and further prosecute the charge for which he was arrested. Failure to obtain an indictment against an accused within a reasonable time after arrest because of "neglect or laches of the prosecution" could be deemed a violation of the Sixth Amendment to the Constitution of the United States. Cf. 14 Am.Jur. 135, p. 859. That would constitute a disposal of "the pending charges against" petitioner, "according to law." § 4246, supra. Under such circumstances, a United States District Court would then be without jurisdiction to further restrain petitioner or determine whether the "conditions specified in * * * section 4247" of Chapter 313 of the Criminal Code "exist" and whether a commitment of petitioner "shall be governed by Section 4248" thereof.

Presently, it appears in the instant case that petitioner's commitment to the Medical Center is intended to be only "temporary". Petitioner admits that his mental condition is such that he is in need of further psychiatric treatment. Until petitioner is in a position to assert before this Court that he is mentally competent to stand trial on any charge that might be filed against him in the United States District Court for the Western District of Oklahoma, he is not presently entitled to be released from his "arrest" status by way of habeas corpus, in light of the mandate of Chapter 313 of the Criminal Code, supra. Cf. Higgins v. McGrath, D.C.W.D.Mo., 98 F. Supp. 670; Kitchens v. Steele, D.C.W.D. Mo., 112 F.Supp. 383.

Therefore, petitioner's application for a writ of habeas corpus is dismissed.

It is so ordered.