**Joseph M. KURNAVA, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. 14496–1.**

United States District Court
W. D. Missouri, W. D.

Oct. 29, 1963.

Joseph M. Kurnava, pro se.

F. Russell Millin, U. S. Dist. Atty., John Harry Wiggins, Asst. U. S. Atty., Kansas City, Mo., for respondent.

JOHN W. OLIVER, District Judge.

This is another habeas corpus case from the Springfield Medical Center for Federal Prisoners. The basic factual situation involved, with a most important variation to be noted, is the same as that presented by Frye v. Settle, W.D.Mo. 1958, 168 F.Supp. 7.

Judge Ridge noted in Frye that the circumstances there involved "are recurringly being presented to this Court". This Court, because of the geographical location of the Medical Center, has exclusive jurisdiction over all applications for habeas corpus filed by inmates of that institution. Judge Ridge therefore deemed it prudent "to call the factual situation involved to the attention of our Brethren of the Bench and Bar, and particularly United States District Attorneys". Experience in this Court since Frye establishes that what was there said needs restating.

Both Frye and this case involve the validity of commitments made pursuant to Section 4246, Title 18 United States Code, in those cases where the Government attempts to proceed by way of information after the execution of a waiver of indictment.

The petitioner in Frye presented the basic query in the following language: "If an insane man is mentally incompe-

tent to stand trial, how may he waive his right to indictment on a charge made against him?" Petitioner raises essentially the same question in this case.

In this case the Government's response establishes that the petitioner was charged by way of an information with a violation of Section 2114, Title 18 United States Code. The information charges that petitioner allegedly assaulted the custodian of the documents of the Veterans Administration Hospital at Brecksville, Ohio, on September 6, 1962. The Government's response states that on October 5, 1962, at the suggestion of the Assistant United States Attorney, the United States District Court for the Northern District of Ohio committed petitioner to the Medical Center for observation and report pursuant to Section 4244, Title 18 United States Code.

The report of the Neuropsychiatric Examination dated October 29, 1962, made by the Medical Center contained the following diagnosis:

"DIAGNOSIS: 000–x26 Schizophrenic Reaction, chronic undifferentiated type, manifested by a long history of episodic aggressive outbursts, suicidal attempts, excessive need to cling to authority figures and institutions, a total inability to adjust outside of an institutional setting, extremely poor impulse control, occasional periods of auditory hallucinations, and markedly impaired judgment."

The recommendation of that examination advised the United States Attorney for the Northern District of Ohio and the committing Court that:

"The patient has been chronically and severely ill for at least the past twelve years. The patient has been able to function only within the protective environments of locked institutions. Whenever the patient's environments have become less struc-

tured such as even on weekend passes, he has tended to lose impulse control and rapidly regress. The patient requires continued institutionalization now and will probably need it for some time to come."

The report of the Neuropsychiatric Staff Examination of November 1, 1962, not only advised that the petitioner would have difficulty understanding the nature of the charge against him and in assisting his legal counsel, but that there existed a real question among the staff as to the patient's responsibility for the alleged crime. That Staff report stated in part:

"It was the opinion of the Neuropsychiatric Staff today that because of the many residual symptoms of the patient's chronic schizophrenic reaction as noted above, that he would have much difficulty understanding the nature of the charges against him and in assisting his legal counsel. Not only does the patient have severe difficulty understanding the nature of the charges, but there was also much question amongst the Staff as to the patient's responsibility at the time of the alleged crime."

The petitioner was afforded the required hearing before the committing court on November 23, 1962. That court ordered petitioner committed to Springfield Medical Center pursuant to Section 4246, Title 18 United States Code.

Thereafter, the United States Attorney for the Northern District of Ohio and the committing court received two separate reports from the Neuropsychiatric Staff at Springfield Medical Center. The first, dated March 6, 1963, recommended that arrangements for state hospitalization in the state of petitioner's residence be made.[1] That report stated the following in regard to the petitioner:

"He is seriously and chronically psychotic with a diagnosis of para-

---

1. The Special Progress Reports of the Staff at the Medical Center also made mention of Section 4248, Title 18 U.S.C. We do not concern ourselves with possible further proceedings under Section 4248 because of the inherent defect in the Section 4246 commitment.

noid schizophrenia and is unable to rationally understand the proceedings against him or to assist in his defense. Because of the unremitting nature of his chronic mental illness, it is our opinion that he should be processed for transfer to a hospital in the state of his residence."

The addendum attached to the Special Progress Report emphasized that petitioner "is chronically and severely ill and has been for a period of approximately 12 years". It also added that:

"As a result of the unstable behavior he has exhibited, he has required numerous Veterans' Administration hospitalizations, some of which were at the VA Hospital at Chillicothe, Ohio; St. Elizabeth Hospital in Washington, D. C.; VA Hospital at Perry Point, Maryland; and the last one being at the VA Hospital at Brecksville, Ohio, where he was prior to being committed to this Medical Center."

Another Special Progress Report dated August 14, 1963, repeated the recommendation made in March and stated in regard to the petitioner:

"He is seriously and chronically psychotic and the diagnosis of paranoid schizophrenia was concurred upon by the staff.

"It was the opinion of the staff that the patient is unable to rationally understand the proceedings against him or to assist in his defense. He should be continued on his present program and further efforts made to transfer him to a hospital in the state of his residence."

The second Special Progress Report was made after petitioner had filed his application for habeas corpus and after this Court had issued its order to show cause in this case.

On September 11, 1963, we issued a supplemental order to show cause for the reason that the Government's original response showed on its face that the petitioner was charged by way of information rather than by indictment. We ordered that the Government's Supplemental Response contain a full factual statement concerning that and other matters.

The Government filed its response to our supplemental order to show cause on October 18, 1963.

In a communication dated September 11, 1963, but not received until after we had issued our supplemental order to show cause, the petitioner denied that he was "a paranoid schizophrenic". More importantly, and in direct contrast with the position taken by the accused involved in the Frye case, the petitioner in this case stated definitively that "I am not mentally ill and have never been out of contact with reality. I only wish I could stand trial".

The supplemental response of the Government states that petitioner was a patient at the Veterans Administration Hospital in Brecksville, Ohio, at the time of the alleged offense. It states that on September 6, 1962, the petitioner returned to that institution from a 24 hour period of absence without leave carrying a .22 caliber automatic pistol and that certain investigative reports indicate that he used the weapon to threaten hospital employees and attempted to obtain $25 from the Funds and Service clerk.

The Government's supplemental response then states that:

"On October 3, 1962, the facts of this event were presented by FBI agents to the United States Attorney for the Northern District of Ohio for an opinion as to prosecutive action. It was determined that Kurnava would be prosecuted, but no complaint was filed before a District Judge or United States Commissioner. Instead agents of the Federal Bureau of Investigation, at the request of the United States Attorney's office, went to the Veterans Hospital on October 3, 1962, at which time Kurnava was still a patient there. In the presence of Special Agents Howard W. Dare and William M. Colby and Dr. H. E. Wilkinson, Chief of Staff, Veterans Administration

Hospital, Brecksville, Ohio, Kurnava executed a waiver of indictment.

"Additional information available to Respondent indicates that upon receipt of the waiver of indictment, the United States Attorney prepared an information in one count charging violation of Section 2114, Title 18, United States Code."

The Government attempts to defend the validity of the commitment by suggesting that a waiver of indictment may be made other than in open court. While we do not approve such a practice in this District, we agree that the cases cited by the Government on that point could be said to sustain that proposition, although, quite frankly, we entertain grave doubts concerning the rationale of those cases.[2]

But much more is involved in this case than the isolated question of an out-of-court execution of a waiver of indictment before Special Agents of the Federal Bureau of Investigation and the Chief of Staff of a Veterans Administration Hospital.

. Frye v. Settle, supra, also relied upon by the Government, not only does not sustain the validity of the detention under the facts here involved; it authoritatively determines that the petitioner is entitled to the issuance of a writ of habeas corpus.

■ Frye makes crystal clear that "an insane person cannot waive indictment and give legal consent to be proceeded against under the latter mode". Frye also holds that inquiry pursuant to Section 4244 may be made into a particular accused's mental competence upon the mere "arrest" of the accused; but Frye points out that the jurisdiction vested by that Section is authority "to proceed against the person of such accused for at least a reasonable period of time".

Frye emphasized that due process of law under a Chapter 313 proceeding "re-quires that sometime after the 'arrest' of a mentally defective person, an indictment by a grand jury of the accused should be sought. * * * proper criminal procedure would dictate that the matter of his accusation be submitted by the District Attorney for consideration of a grand jury".

Frye quoted from Youtsey v. United States, 6th Cir. 1899, 97 F. 937, 940, to the effect that "[i]t is fundamental that an insane person can neither plead to an arraignment, be subjected to a trial, or, after trial, receive judgment, or, after judgment, undergo punishment."

■ Frye held that "[f]ailure to obtain an indictment against an accused *within a reasonable time after arrest* because of 'neglect or laches of the prosecution' could be deemed a violation of the Sixth Amendment to the Constitution of the United States". We add that we think it obvious that failure to obtain indictment within a reasonable time after arrest is also a violation of the Fifth Amendment.

It was only because the petitioner in Frye admitted that he was "in need of further psychiatric treatment" that the detention was ruled valid in that case. Judge Ridge made clear that if the petitioner asserted that he was mentally competent to stand trial, the petitioner would then be entitled to test his arrest status by way of habeas corpus.

Other facts weigh upon the question of whether a reasonable period of time has elapsed between petitioner's arrest and the making of a valid charge against him, which, of course, could have been only by indictment under the facts in this case.

The Court is advised that the Civil Rights Division of the Department of Justice made inquiry of the Medical Director of the Bureau of Prisons as to the advisability of giving favorable consideration to the dismissal of the pending

---

2. The cases cited by the Government are: United States v. Jones, 7th Cir. 1949, 177 F.2d 476; United States v. Maher, D.C. Maine, 1950, 89 F.Supp. 289; Kossin v. United States, 6th Cir. 1956, 235 F.2d 188; and Ching v. United States, 10th Cir. 1961, 292 F.2d 31.

charges against the accused in favor of a transfer to a State hospital. This action was initiated after petitioner had filed his application for habeas corpus. Slight familiarity with the complicated problems involved establish that one charged, but not convicted, of a federal crime will not be accepted by most State mental health hospitals unless the federal charge is dismissed.

The Medical Director, being unadvised of the inherent defect in the procedure as it related to the absence of an indictment, quite properly considered the potential hazard that petitioner presents. to hospital personnel and particularly to physicians of the Veterans Administration Hospital at Brecksville, Ohio, should petitioner eventually be returned there, and recommended that petitioner should not be considered for transfer to a State hospital until his potential dangerousness is more fully evaluated in light of these considerations. The Medical Director obviously had in mind further proceedings in the committing court pursuant to Sections 4247 and 4248 of Title 18 United States Code. Such proceedings are obviously unavailable at the present time because of the defect in the Section 4246 commitment.

This case, of course, points up the inadequate facilities presently available within the federal government for the commitment of persons charged with violation of federal law in institutions other than penal institutions.

But we cannot permit the violation of Constitutional rights of any accused merely because Congress has not yet seen fit to provide such facilities.

For the reasons stated, petitioner's application for habeas corpus should be and is hereby sustained.

A writ of habeas corpus should be and is hereby ordered issued, and, exercising the power to dispose of this matter as law and justice require, conferred by Section 2243 of Title 28 United States Code, it should be and it is further ordered that the petitioner be returned to the office of the Chief Probation Officer for the District Court of the United States for the Northern District of Ohio, Eastern Division, and to there be released. We, of course, have no power to issue any order to that Probation Officer but we are hopeful that such officer will be able, as a practical matter, to see that some practical steps are taken to the end that petitioner receive such medical care as can be made available.

It is so ordered.