Earnest STOCKWELL, Petitioner,

v.

Harold R. SWENSON, Warden, Respondent.

No. 1126.

United States District Court
W. D. Missouri,
Central Division.

Nov. 3, 1966.

Earnest Stockwell, pro se.

Norman H. Anderson, Atty. Gen. of Missouri, Howard L. McFadden, Asst. Atty. Gen., Jefferson City, Mo., for respondent.

## MEMORANDUM AND ORDER

JOHN W. OLIVER, District Judge.

On September 21, 1966 we issued a memorandum and order directing respondent to answer particular questions and to attach copies of particular trial and appellate court records in order to determine whether petitioner has exhausted his available state court remedies. The order was based on the teaching of Townsend v. Sain that a "District Court sitting in habeas corpus clearly has the power to compel production of the complete state-court record" (372 U. S. 293 at 319, 83 S.Ct. 745 at 760, 9 L.Ed. 2d 770).

On October 10, 1966, and after full discussion held at pretrial conference, we determined that the response of the respondent filed October 4, 1966 was inadequate and ordered compliance with our initial order.

On October 24, 1966 respondent filed a second response to the order to show cause. Respondent attached to that response copies of some of the proceedings had in the Supreme Court of Missouri and upon which is based respondent's contention that petitioner has not exhausted his available state court remedies. Respondent affirmatively alleges that petitioner is in fact attempting to bypass such procedures.

Through the cooperation of Larry Zahnd, Esq. of Maryville, Missouri, counsel appointed by the Honorable J. Dorr Ewing, the present Judge of the Circuit Court of Holt County, Missouri, to represent petitioner in connection with petitioner's Rule 27.26 motion filed September 25, 1965 in that court, we obtained what we believe to be accurate copies of the transcript on appeal and the supplemental transcript on appeal from Judge Ewing's denial of petitioner's Rule 27.26 motion. We express appreciation to Judge Ewing and Mr. Zahnd for

their assistance. In light of the discussion had at pretrial of this case and that had at the pretrial of *Teddy Ray Sims v. Swenson, Warden,* No. 1031, counsel for respondent will understand that in future cases this Court will be furnished the complete state court records in a different manner.

If either the petitioner or the respondent contends that the transcript on appeal and the supplemental transcript on appeal, to which we shall make several references, are in any way inaccurate, either may so indicate in writing within one week from the date of this Memorandum and Order.

## I.

The data now before the Court indicates that on September 25, 1965 petitioner filed a motion pursuant to Missouri Rule 27.26, V.A.M.R. seeking to set aside and vacate a life sentence imposed on a plea of guilty to second degree murder by the late Judge R. B. Bridgeman on December 23, 1943 (27.26 Tr. 2); that such motion alleged numerous federal claims including the alleged denial of counsel before the Justice of the Peace; alleged denial of any waiver of preliminary hearing; alleged denial of competent counsel to afford petitioner adequate representation before the trial court; and alleged coercion concerning his plea of guilty (27.26 Tr. 2–15); that on October 22, 1965 the Honorable J. Dorr Ewing, Judge of the Fourth Judicial Circuit of Missouri, appointed Larry Zahnd, Esq., to represent the petitioner in connection with his 27.26 motion (27.26 Tr. 19–20); that on December 13, 1965 a hearing on that motion was held (27.26 Tr. 21–113); that decision on the motion was taken under advisement (27.26 Tr. 114) and *denied on January 14, 1966 (27.26 Tr. 116–119).*

Judge Ewing's order overruling the 27.26 motion granted petitioner an appeal to the Supreme Court of Missouri; determined the indigency of the defendant; ordered the cost of the transcript to be paid by the State; and appointed Mr. Zahnd to represent the defendant in his appellate proceedings (27.26 Tr. 118–119). A formal notice of appeal was filed January 20, 1966 (27.26 Tr. 120). The supplemental transcript on appeal of the Missouri Rule 27.26 motion shows that petitioner filed what he called an application for writ of habeas corpus on December 23, 1965, which the court overruled on February 3, 1966 (the appeal from the denial of petitioner's Rule 27.26 motion already having been perfected) and that petitioner, *pro se,* filed a "motion and affidavit for appeal" in regard to that order on March 7, 1966 (Supp. 27.26 Tr. 3–10).

It should here be noted that petitioner attempted to appeal the dismissal of his *pro se* habeas corpus petition only and shortly after he had been incorrectly advised by the Clerk of the Supreme Court of Missouri on February 19, 1966 that no appeal had been filed on his behalf in connection with the trial court's denial of his Missouri Rule 27.26 motion. As will be developed later in detail, petitioner was not advised until April 5, 1966 that an appeal from the denial of his Missouri Rule 27.26 motion had in fact been filed in the Supreme Court of Missouri on January 24, 1966.

Petitioner must have written the Supreme Court of Missouri some sort of a letter on February 16, 1966. That letter is not attached to respondent's response but we assume such a letter was written because a copy of the letter dated February 19, 1966 to petitioner from the Clerk of the Supreme Court of Missouri is one of the exhibits attached to respondent's response. That letter stated: "In reply to your letter of February 16, 1966, we wish to advise you we have no case on file wherein you are a party."

On March 29, 1966 the petitioner, still acting *pro se,* filed in the Supreme Court of Missouri what he called a "Motion to Dismiss Appeal in Case No. 51969." How and from whom the petitioner obtained the appeal number of his case, which he had at that time been advised was not on file, is not apparent from the documents furnished this Court by respondent. Petitioner's *pro se* motion

stated that he had been informed on February 19, 1966 by the Clerk of the Supreme Court "that there is no case on appeal to that court wherein this appellant was a party." He then obviously attempted to perfect an appeal from Judge Ewing's order of February 3, 1966 that denied petitioner's *pro se* petition for habeas corpus. Petitioner's *pro se* motion prayed that he "be ordered by the Court if he wishes to appeal his case to comply with the constitution and laws of the State of Missouri regarding appeals to the Supreme Court of this State." Although in somewhat typically garbled language, it is apparent that petitioner wanted his 27.26 appeal "withdrawn from the court docket" only in order that his appeal from his *pro se* habeas corpus proceeding be perfected. This is apparent from the following paragraphs of petitioner's motion:

On the 3d, day of February A.D. 1966, the Circuit Court of Holt County Missouri heard the appellants application for a writ of habeas corpus and the court denied same. * * * On January 14th, A.D. 1966, the appointed counsel for the appellant filed notice of appeal in appellant's case and on February 19th, A.D. 1966, this appellant was informed by the Clerk of the Supreme Court Mr. Marion Spicer, that there was no case on appeal to that court wherein this appellant was a party. * * *

When the appellant filed his application for the writ of habeas corpus for his release then the motion to vacate the judgment and sentence * * * and all other writs must yield to the writ of habeas corpus and the officer holds the prisoner under that writ and no other. * * *

This appellant herein now moves and prays the Honorable Court * * * that the appellant be ordered by the Court if he wishes to appeal his case to comply with the constitution and laws of the State of Missouri regarding appeals to the Supreme Court of this state. * * *

(Appellant's Motion of March 29, 1966, pages 2–4).

Respondent directs our attention to a letter Judge Ewing wrote the petitioner on April 4, 1966. Judge Ewing forwarded copies of his letter to petitioner to Mr. Zahnd, petitioner's appointed counsel, and to the Clerk of the Supreme Court of Missouri. In that letter Judge Ewing properly pointed out to petitioner that the proceeding under Missouri Rule 27.26 was a distinct and separate matter from petitioner's *pro se* efforts to obtain habeas corpus; that an appeal was in fact pending in the Supreme Court of Missouri from the denial of the Rule 27.26 motion; that Mr. Zahnd was representing petitioner; and that petitioner's expressed dissatisfaction with Mr. Zahnd had caused Mr. Zahnd to request to be relieved of his duty to represent petitioner in the case pending in the Supreme Court.

Judge Ewing advised petitioner that he would not permit Mr. Zahnd to withdraw unless the petitioner had other legal counsel and that he would not otherwise relieve Mr. Zahnd because Judge Ewing recognized that petitioner needed legal counsel in connection with his pending Supreme Court of Missouri appeal. Judge Ewing specifically requested that petitioner advise him "whether or not you (1) want to have an attorney of your own choosing to handle the matter for you or (2) desire to handle the matter yourself without an attorney."

On April 5, 1966 the Clerk of the Supreme Court of Missouri, apparently without forwarding a copy of his letter either to petitioner's counsel of record or to Judge Ewing, advised the petitioner that his letter to petitioner of February 19, 1966 had incorrectly stated that there was no case on file here in which petitioner was a party. That letter also stated that the Supreme Court of Missouri had directed that the petitioner be advised that the appeal on the 27.26 motion in fact had been timely filed; that a transcript of the record of the hearing had been prepared and filed on March 24,

1966; and that the appeal would be set on the Supreme Court of Missouri September 1966 docket. The Clerk's letter suggested that in view of these facts petitioner might want to reconsider his *pro se* motion to dismiss.

On April 6, 1966 the petitioner answered the Clerk's letter of April 5. Petitioner, apparently without the advice of his appointed appellate counsel, disputed the Clerk's clearly correct statement that an appeal in fact had been perfected from the denial of petitioner's 27.26 motion and contended erroneously that the filing of his *pro se* application for habeas corpus somehow deprived the Supreme Court of Missouri of its obvious jurisdiction to hear the appeal in the Rule 27.26 matter. The concluding paragraph of petitioner's letter stated in not atypical language that:

> Now it is my desire to put my case through court soon as possiable [sic] and this can not be done if i [sic] act on the suggestions of the state courts to satisfy their ego, for they will have me sticking my head in a barrell [sic] of water therefore i [sic] prefer to stick with the decisions and laws of the United States and if i [sic] am wrong they will tell me and so will the higher courts tell the state courts in case they are wrong.

On April 12, 1966 the Clerk advised petitioner, sending copies of that letter to the Attorney General and to Mr. Zahnd, that the Supreme Court of Missouri had made a minute entry that "appellant's motion, *pro se*, to dismiss appeal overruled." In another letter to petitioner dated April 12, 1966, however, copies of which apparently were not sent to anyone else, the Clerk acknowledged receipt of petitioner's letter dated April 6, 1966 and advised him that his letter had been placed in the file and that it would be called to the attention of the Supreme Court of Missouri. A postscript to the Clerk's letter added:

> P.S. Your letter has been called to the Court's attention and they direct me to inform you that your motion to dis-

miss appeal has been overruled. However, if you wish to send in a voluntary dismissal of it, you may do so.

On April 25, 1966, petitioner, apparently responding to the Clerk's postscript, replied to the Clerk's letter stating:

> Your letter as of April 12th, recieved [sic] of which you informed me that the court had overrruled [sic] my motion to dismiss my appeal in the above named cause.
>
> This is to advise the court that it is my desire that my case be dismissed voluntaraly [sic], and that the case be withdrawn from the court docket. Thank you i [sic] remain as ever.

On April 30, 1966 Judge Ewing wrote the petitioner, with copies to Mr. Zahnd and to Mr. Spicer, advising the petitioner that he had not replied to Judge Ewing's letter of April 4. Judge Ewing enclosed a copy of that letter requesting an answer, stating: "After I receive your reply I can then decide whether or not Mr. Zahnd should be released from his obligation as your attorney."

On May 2, 1966 the Clerk of the Supreme Court of Missouri, with copies of this letter to Mr. Zahnd and to Judge Ewing, wrote petitioner that the Supreme Court of Missouri had made a minute entry which stated that "the appellant having voluntarily asked a dismissal of his appeal, and the Court, having considered the voluntary dismissal in connection with all other contents of the file, approves the dismissal and the appeal is dismissed."

## II.

Application of the principles stated in White v. Swenson, Warden, W.D. Mo. 1966, 261 F.Supp. 42, decided November 2, 1966, requires that petitioner's application for habeas corpus be dismissed without prejudice under the circumstances presented by this record. But that dismissal is not on the ground suggested by the respondent.

Because the question of by-passing will undoubtedly arise in future cases, we shall state the applicable principles of

law. Fay v. Noia, 372 U.S. 391 at 438, 83 S.Ct. 822 at 849, 9 L.Ed.2d 837 (1963), makes clear that "the federal habeas judge may in his discretion deny relief to an applicant who has deliberately by-passed the orderly procedure of the state courts and in so doing has forfeited his state court remedies."

But that case immediately added: "But we wish to make very clear that this grant of discretion is not to be interpreted as a permission to introduce legal fictions into federal habeas corpus" (372 U.S. at 439, 83 S.Ct. at 849).

The Supreme Court of the United States expressly adopted the classic definition of waiver enunciated in 1938 in Johnson v. Zerbst, 304 U.S. 458 at 464, 58 S.Ct. 1019 at 849, 82 L.Ed. 1461—"an intentional relinquishment or abandonment of a known right or privilege"—as the controlling standard for state convict habeas corpus proceedings. See Fay v. Noia, 372 U.S. at 439, 83 S.Ct. 822. The criteria applicable to state convict waiver and by-passing was further defined on that page:

> If a habeas applicant, after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the deliberate by-passing of state procedures, then it is open to the federal court on habeas to deny him all relief if the state courts refused to entertain his federal claims on the merits—though of course only after the federal court has satisfied itself, by holding a hearing or by some other means, of the facts bearing upon the applicant's default. Cf. Price v. Johnston, 334 U.S. 266, 291, 68 S.Ct. 1049, 1063, 92 L.Ed. 1356. (372 U.S. at 439, 83 S.Ct. at 849).

Further admonitions against the introduction of legal fictions into federal habeas corpus proceedings via the by-passing route are contained in the Supreme Court of the United States' statement that "we wish it clearly understood that the standard here put forth depends on the considered choice of the petitioner" and that "a state court's finding of waiver [does not] bar independent determination of the question by the federal courts on habeas, for waiver affecting federal rights is a federal question" (372 U.S. at 439, 83 S.Ct. at 849).

Respondent's contention that petitioner attempted to by-pass his available state court remedies is based on a minute entry of dismissal of petitioner's appeal from the denial of his Rule 27.26 motion entered by the Supreme Court of Missouri apparently as a result of the correspondence between the petitioner and the Clerk of the Supreme Court of Missouri, which is summarized in part II above. We need hold no hearing to determine that petitioner did not make an intentional relinquishment or abandonment of a known right or privilege.

The exhibits attached to respondent's response show on their face that petitioner was first incorrectly advised that he had no appeal pending in the Supreme Court of Missouri when he in fact did and that after that mistake was corrected by order of the Supreme Court of Missouri, the Clerk of that Court nevertheless continued to correspond with the petitioner, in some instances apparently without sending copies of his correspondence to appointed appellate counsel for the petitioner.

Petitioner's unlettered correspondence with the Clerk of the Supreme Court of Missouri, his *pro se* pleadings filed in the trial court and in the Supreme Court of Missouri, and his *pro se* pleadings filed in this Court establish that petitioner, without advice of counsel, was initially attempting, on the basis of the inaccurate information given him, to proceed in the Supreme Court of Missouri and that he attempts to proceed in this Court on the obviously untenable legal theory that his *pro se* application for habeas corpus had somehow supplanted that 27.26 proceeding. Petitioner gave and now gives every evidence of believ-

ing that he had the right to raise his federal claims in the habeas corpus proceeding that he attempted to institute on his own and that his *pro se* action had the legal effect of terminating all proceedings that had been held in connection with the Rule 27.26 hearing.

█ Regardless of how garbled the expression of petitioner's untenable legal theory, the fact remains that petitioner was initially incorrectly advised of the status of his 27.26 appeal, and that such advice produced the *pro se* efforts to perfect the habeas corpus appeal. The fact also remains that petitioner was eventually permitted, if, indeed, not almost invited, to dismiss his Rule 27.26 appeal apparently without the knowledge and certainly without the assistance of his appointed counsel. Under those circumstances, it cannot fairly be said that petitioner either attempted to by-pass the Supreme Court of Missouri or that he knowingly and voluntarily dismissed the appeal of his Rule 27.26 appeal.

### III.

If petitioner's testimony at the first Rule 27.26 hearing proves to be true at a later evidentiary hearing, it will become apparent petitioner was transferred from the Missouri Penitentiary in 1946 to State Hospital No. 1 at Fulton, Missouri, and there confined until January, 1964 as a mental patient (27.26 Tr. 53, 65–66). Under that circumstance, it is obvious that there would be a very real question about whether petitioner may have been mentally competent to have waived any of his legal rights and to direct that his appeal be dismissed. Compare Kurnava v. United States, W.D. Mo.1963, 222 F.Supp. 822, and cases there cited. The question of petitioner's mental competency has been involved in this case from its beginning. Because that question will eventually be the subject of a full and fair evidentiary hearing in either the state trial or in this Court, we shall state certain facts that are already apparent.

The transcript of the Rule 27.26 hearing and the exhibits introduced in that hearing indicate that prior to the acceptance of petitioner's plea of guilty, the late Judge Bridgeman ordered that petitioner be examined at State Hospital No. 2 at St. Joseph in order to determine the sanity or insanity of the petitioner. The Superintendent of the State Hospital was ordered to report his findings to the trial court within a reasonable period of time. See Order of December 2, 1943, of Circuit Court of Holt County, Missouri (Df. Exh. 1, 27.26 Tr.).

That order was apparently complied with but the report of the physician in regard to petitioner's mental competency to stand trial was never filed in the trial court, never seen by petitioner's appointed counsel (27.26 Tr. 96), never referred to by the sentencing judge, and was not received in evidence at the Rule 27.26 hearing.

There can be no doubt but that the question of petitioner's mental condition was a matter of concern both to petitioner's counsel and to the sentencing judge. The original transcript of the 1943 proceedings before the Circuit Court of Holt County, Missouri at Oregon (State Exhibit A in 27.26 Tr.) shows that defendant first appeared before the late Judge Bridgeman on December 13, 1943, without counsel. After some inquiry in regard to whether the petitioner had any property, the Court appointed the late Lester Vonderschmidt, Esq. of Mound City, and E. E. Richards, Jr., Esq. of Oregon, to represent the petitioner (the transcript of the proceedings held November 14, 1943 before Justice of the Peace W. H. Alkire shows that petitioner was not represented by counsel at the time he purportedly waived preliminary hearing).

On December 13, 1943, the late Mr. Vonderschmidt stated to Judge Bridgeman that defendant desired to withdraw the plea of not guilty entered by the trial judge on December 13, to the charge of first degree murder. The trial judge asked counsel, not the petitioner, whether this was what "you want to do" (Tr. 4

of December 23, 1943 proceedings). The defendant was not in any way addressed by the trial judge nor did he indicate in any way that he agreed with the statement of his counsel. Mr. Vonderschmidt asked if he could "make a little statement." In the course of that statement, Mr. Vonderschmidt stated:

* * * There is some question in my mind whether the defendant realizes the gravity of the charge against him. * * *

* * * I don't know of any extenuating circumstances except that perhaps his mind isn't developed as is the mind of a normal adult, and as I say, I don't think that he realizes fully the gravity of the charge against him, and it is with a great deal of hesitation that we come into court for him and enter a plea, a plea of guilty of murder in the second degree. * * *

* * * For the reason that his mind wasn't fully developed and for the further reason that there is some question as to his sanity both at the time the crime might have been committed and at the present time we, Mr. Richards and I as counsel appointed by the Court feel that under the circumstances the plea which has been entered for the defendant is the proper plea. (Orig.Tr. 4-6).

Mr. Richards, in the course of a similar statement, said:

* * * I am in full agreement with my associate counsel. * * * We feel that this plea that has been entered is in part our plea rather than the plea of the defendant, that should he be of unsound mind then we have spoken for him and it is not his plea that is now before the Court. (Orig. Tr. 6).

The following colloquy then took place between the trial judge and counsel appointed to represent the defendant:

THE COURT: Well, you have gone over the entire matter with the defendant?

MR. RICHARDS: Yes, we have.

THE COURT: Recommended to him what you feel should be done under the law?

MR. RICHARDS: Yes, this is our recommendation.

THE COURT: And he has accepted it?

MR. RICHARDS: Yes.

THE COURT: Well, it is his plea then. (Orig.Tr. 6-7).

The transcript of December 23, 1943 indicates that neither the trial judge nor petitioner's counsel addressed a single question to the petitioner up to this point in the record. It also shows that before anything was said directly to the petitioner, Judge Bridgeman commented:

THE COURT: What might be the condition of the defendant at this particular time might be ascertained, but if I understand the prosecuting attorney correctly, nobody particularly knows the condition at the time the offense was committed. * * * But I feel this way about it, I feel that [I am] doing the defendant no wrong in accepting the plea because if after a long trial he should be pronounced such [insane] by a jury, he would of necessity, would go to the criminal insane and whereas if he enters his plea and goes to the penitentiary he will go to the same place as they might direct there that he is such. So I feel that there is no wrong done the defendant in accepting a plea and going ahead this way. (Orig. Tr. 7-8).

Judge Bridgeman indicated his interest in "the end to be accomplished" by his acceptance of the plea of guilty to second degree murder tendered by petitioner's counsel by stating:

* * * A plea of guilty of first degree murder would carry either a death penalty or penitentiary for life. A plea of second degree murder without deliberation would be from ten

years on up to life imprisonment. The same end can be accomplished with a plea of guilty under second degree murder as it would under the first so far as penalty is concerned. This is an awful thing to have happened in a civilized community as I have said before, deplorable. Since the defendant has come and entered a plea of guilty to second degree murder, I feel that I should still administer the life penalty. I don't know but what I might have done the same thing under first degree murder on the plea of guilty, but the same end can be reached this way. * * * So with this in view, I will fix the sentence at life imprisonment. (Orig.Tr. 8–9).

It was at that point in the record that Judge Bridgeman addressed the defendant for the first time, stating: "Is there any legal reason, Earnest, why sentence should not be pronounced upon you at this time?" To which petitioner responded, "No, whatever you want to do." (Orig. Tr. 9). That answer represented petitioner's sole contribution to the entire proceeding.

■■ Even if the exhibits attached to respondent's response tended to support at least a paper waiver, which we have determined they do not, the question of whether petitioner was mentally competent to have intentionally relinquished or abandoned a known right of appeal would have to be the subject of an evidentiary hearing in this Court because a question concerning "waiver affecting federal rights is a federal question," Fay v. Noia, 372 U.S. at 439, 83 S.Ct. at 849. As we have suggested, that hearing need not be held because it is clear that petitioner has not exhausted his available state court remedies.

■ We have outlined the data now before this Court in regard to the question of whether petitioner was mentally competent at the time of sentence to focus attention on the apparent substance of that question and, hopefully, to save the state trial judge some time in the identification of particular evidence that must be introduced in a second Missouri Rule 27.26 hearing, should petitioner elect to file a new motion. White v. Swenson, supra, makes clear that petitioner has a federal right under the trilogy to a full and fair evidentiary hearing of all his alleged federal claims, and that if such a hearing is not granted in the state courts, it will be granted by this Court.

■ A prime objective of both state and federal courts should be that such hearing be held in the state trial court under procedures consistent with the trilogy so that the initial state court hearing will prove to be the only evidentiary hearing that need be held in any other court. In this particular case, for example, if on the second Missouri Rule 27.26 hearing, the state trial court receives in evidence the complete reports from both the State Hospitals at St. Joseph and Fulton, the testimony of Dr. Perry (if he still is alive) (27.26 Tr. 46), the testimony of all other persons who may have personal knowledge of what occurred in regard to every alleged violation of federal right (including the Hamilton v. State of Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L. Ed.2d 114, and White v. State of Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed. 2d 193, question already recognized as being involved in this case (27.26 Tr. 103–105)), and, in general, conducts such hearing in accordance with the principles of the trilogy set forth in White v. Swenson, supra, there ordinarily would be no occasion for any further evidentiary hearing in any court.

Application of the "Pretrial Suggestions for Section 2255 Cases under Title 28, United States Code" of the Honorable James M. Carter, United States District Judge for the Southern District of California, San Diego, published in 32 F.R.D. 391, has proved helpful to both state and federal courts in their efforts to conduct a postconviction evidentiary hearing in a manner that will obviate the necessity for later additional hearings. The state trial court might find that some of those suggestions would prove to be

helpful in this case should petitioner file a new Missouri Rule 27.26 motion, or should the trial court on its motion order a further hearing in connection with petitioner's original motion.

## IV.

■■ The only valid reason that petitioner's present application for federal habeas corpus must be dismissed without prejudice is because it is clear that petitioner has not yet exhausted all of his available state court remedies. The fact that his appeal from the denial of his original Rule 27.26 motion aborted is not a bar to petitioner's filing of a second Rule 27.26 motion in the state trial court. The reason why that appeal aborted is immaterial. No reason exists why petitioner may not perfect an appeal from any denial of relief by the trial court from a second Rule 27.26 motion, should petitioner elect to file one.

The controlling fact in regard to our application of Section 2254 of Title 28, United States Code, is that the Supreme Court of Missouri has not yet ruled petitioner's federal claims on the merits and the fact that available state procedures exist, which, if properly invoked by the petitioner, would afford that court the opportunity to rule on petitioner's federal claims. Until and unless petitioner invokes those available state postconviction remedies, this Court ordinarily will not exercise its habeas corpus jurisdiction under the principles fully discussed in White v. Swenson, Warden, supra.

In the course of obtaining copies of the state court transcripts, we discussed this case with the Honorable J. Dorr Ewing, Judge of the Fourth Judicial Circuit of Missouri, the present judge of the committing court. Judge Ewing indicated, and has authorized me to state, that he would entertain a second Rule 27.26 motion should petitioner elect to file one; that he would, in that event, again appoint counsel to represent petitioner; that on the second Rule 27.26 hearing, he would receive all available evidence in regard to all petitioner's federal claims, including but not limited to the question of petitioner's mental competency to stand trial; and that he would make appropriate and detailed findings of fact and conclusions of law enunciating and applying current federal constitutional standards in accordance with the requirements of Missouri Rule 27.26 and the principles stated in the trilogy in order that petitioner might, in the event Judge Ewing should deny relief, again appeal to the Supreme Court of Missouri so that such court again would have the opportunity to rule petitioner's federal claims presented on the merits.

Every consideration of state and federal court relations recommends that the state courts be afforded the opportunity to proceed in the manner Judge Ewing has indicated. Judge Ewing's statement, of course, is consistent with the highest tradition of the Missouri Judiciary. This Court is indebted to Judge Ewing for his expression of cooperation in this rapidly developing area of constitutional law. Such cooperation between state and federal courts will enable the judges of both judicial systems to perform the tasks imposed on both by the trilogy decisions of the Supreme Court of the United States. See Chief Judge Becker's article "Habeas Corpus and Postconviction Review," 33 F.R.D. 452 at 492 (1963).

If Judge Ewing believes that the long experience of former and present judges of this Court in processing federal cases involving mentally ill prisoners confined in the Medical Center for Federal Prisoners might be helpful to him in processing any new Rule 27.26 motion that petitioner may elect to file, we will promptly respond to any request that he may make of this Court.

For the reasons stated, petitioner's petition for habeas corpus should be and is hereby denied without prejudice in order that petitioner may exhaust his available state remedies.

It is so ordered.