## WILLIAM M. CAFFEY *v.* STATE OF MISSISSIPPI.

1. CRIMINAL LAW. *Insanity. Acquittal. Lucid intervals. Code* 1892, §§ 1466–1468.

    If a defendant be acquitted of murder on the ground of insanity, and sentenced to the lunatic asylum under code 1892, §§ 1466–1468, he cannot obtain his discharge because of lucid intervals.

2. SAME. *Appeal.*

    An appeal does not lie from an acquittal of murder on the ground of insanity, although defendant be sentenced to the lunatic asylum.

FROM the circuit court of Montgomery county.

HON. WILLIAM F. STEVENS, Judge.

Caffey, appellant, was convicted of murder and acquitted on the ground of insanity, the jury certifying in their verdict that the defendant was still insane and dangerous. The court below sentenced him to the lunatic asylum, under code 1892, § 1468. The defendant appealed to the supreme court. The opinion states the case.

*Sweatman, Trotter & Knox,* for appellant.

The statute, § 1468, code 1892, under which appellant was sentenced, does not apply where the subject has lucid intervals, nor to a case of intermittent insanity; it only applies to cases of continuous insanity. The facts of this case do not warrant the finding of the jury to the effect that appellant is still insane and dangerous. It is manifest from the evidence in this case that the appellant is perfectly rational and sane nine-tenths of

the time.　But suppose the statute covers intermittent insanity. It was in 1897 that this killing occurred.　There is no evidence that appellant has done anything since then of a dangerous character.　A fear or the apprehension that the disease with which he is afflicted may cause a like insane act is all there is in the case.　Is this sufficient?　If it is, then all epileptics should be confined.　All are liable to do such acts.　Appellant is not only sane, but a man of intelligence and business ability except when he has spells.　He is not insane.

*Monroe McClurg*, attorney-general, for appellee.

Under § 1466, code 1892, it is made the duty of conservators of the peace to hold the prisoner "if it shall appear that he was insane when he committed the offense, and is still insane," and to report him for a writ *de lunatico inquirendo*. And so with the grand jury under § 1467, if they find the accused insane, and to " be in condition as to endanger the security of persons or property and the peace and safety of the community."　But upon trial, under § 1468, the petit jury sits also as a jury of inquiry into his sanity, with power in the circuit court to order a commitment upon its finding that the accused " is still insane and dangerous."　Evidently the extent of the danger required by law to be fairly shown is that named in § 1467, " to the security of persons or property and the peace and safety of the community."　If there is enough in the testimony to uphold this view, it cannot be said that the verdict is manifestly wrong.

It may be doubted whether any provision is made by law for an appeal from the " certificate " of the jury and the " order " required by law to be entered by the "judge " in a case of this character.　The judgment is not final.　§§ 31 and 32, code 1892.　No provision is made for supersedeas, nor for local confinement pending the appeal.　The order is that he be conveyed to an asylum (§ 1468) to be there admitted and received (§ 2840), finally adjudged, and accordingly

held or discharged as the superintendent may determine. § 2842. This view comports to the procedure prescribed by chapter 88 of the code of 1892 relative to lunatics. The law seems to intend that when one is found to be insane by a jury of twelve, under § 1468, that the finding shall have at least the same effect as the finding of a majority of a jury of six under §§ 2835 and 2836, in which no appeal is provided, and that the patient shall at all events be examined and adjudged by the expert superintendent, always being safe in his right to the writ of *habeas corpus.*

CALHOON, J., delivered the opinion of the court.

This record shows a homicide which, if committed by a sane man, would be a murder as atrocious and horrible and unprovoked, as flagitious and blood-curdling, as could be imagined. Without any previous trouble or personal altercation, Mr. Caffey rushed on his own uncle, a man sixty-five or seventy years of age, and slew him by repeated thrusts of a knife, while the uncle was walking off, after an amicable talk with the slayer and others, to mount his horse and go home. On the face of it, if ever there was a case warranting a conviction of murder, if the man who slew was sane, this is pre-eminently the case. Of course this was clearly seen by the very distinguished counsel for Mr. Caffey, and so they proceeded to show to the satisfaction of the jury that he was insane when he did the monstrous deed. In order to establish this defense, they very properly showed by evidence that he was an epileptic, and had often, while under the attacks of that mysterious and unexplained disease, tried to kill his close kindred and best friends. The jury responded to the skillful defense of counsel, and returned a verdict of not guilty, but, according to the statute, said: "We, the jury, find the defendant not guilty, on the ground of insanity at the time, and certify that the defendant is still insane and dangerous."

And now comes the defendant and wants all after the words

" not guilty " expunged from the verdict, and the judgment sentencing him to the insane asylum reversed, because all the testimony shows that his acute attacks were only periodical, with varying periods from three to five weeks, and that in the intervals he was sensible, not disposed to kill anybody, money-making, prosperous and thrifty. We agree with the jury. This is an insane man with lucid intervals, in the view of the law, which looks to the protection of society. If all lunatics were to be set at large at every lucid interval, society would be a pandemonium. Code, §§ 1466–1468, rationally construed, warrant no other view, even if the verdict be reviewable, and we do not think it is. Code, §§ 31, 32, 2835, 2836, 2840, 2842.

*Affirmed.*