I concur in the result reached by the majority which is to say only that it is my opinion the appellant should be institutionalized for the protection of the public.
The evidence of the medical witnesses is overwhelming, indeed uncontradicted, that Lias was insane at the time he killed seven individuals.[1] These doctors also gave evidence, again uncontradicted, that Lias was incapable of distinguishing right from wrong at the time of the slayings (the McNaughton rule). From this evidence I am of the opinion the appellant was mentally incapable of forming a premeditated design (malice aforethought) to kill and therefore is not guilty of murder.
This is not to say, however, that he did not slay those named in the indictment because the record indisputably reveals that he did so albeit, in my opinion, without criminal intent. Under this circumstance I think the proper procedure for the protection of the public which I am convinced does not violate constitutional due process, is: In the event it is established in a criminal proceeding that an act of violence has been committed, dangerous to the public and likely to be repeated, which would have been a crime if committed by a sane person, and additionally, there is evidence of insanity, this is sufficient for judicial commitment to a mental institution for the welfare of the individual and for the protection of the public.
I am of this opinion because our present statutes and case law delineate no clear provision for a case of this category. A review of the jury instructions reveals this deficiency. The jury (1) could have found the defendant guilty of premeditated murder, (2) it could have found the defendant not guilty, (3) it could have found the defendant not guilty by reason of insanity but certify that he is dangerous because "still insane,"[2] or (4) it could have found the defendant not guilty because of insanity and certify that he has since been restored to reason.[3] These instructions, when considered with another which states in part, "Insane people cannot be criminally punished for what they do; and this is true, regardless of whether such mental condition is temporary or permanent," left the jury with no realistic alternative to a verdict other than murder.
This is so, in my opinion, because it is very unlikely that a jury by its verdict would return a multiple killer to the streets even though criminal intention to commit the act was absent. I would avoid the "murder" result which I believe contrary to the overwhelming weight of the evidence and the law, by the procedure suggested above so that a person found not guilty by reason of insanity, but who is presently restored to reason, could be confined to a mental institution for his welfare and for the protection of the public.
Although Lias was previously adjudged incompetent for trial, his reason has been restored by medication and his present ability for trial is not an issue. His condition is diagnosed as schizophrenia, paranoid type, in remission. The record discloses Lias suffers from residuals of schizophrenia with the potential to again become psychotic and moreover, is capable of further acts similar to those for which he was tried. Only daily medication abates such occurrence. This *Page 203 
contingency presents a dangerous situation to which society should not be exposed. In Holloway v. State, 312 So.2d 700
(Miss. 1975), we stated:
 Like other cases of this nature the courts are confronted with the absolute necessity of protecting society from the acts of the dangerously insane. There is no ready or perfect answer to the question as to what should be done with these wretched and unfortunate people. Mississippi Code Annotated Section 99-13-7 (1972) is a reflection of a legislative effort to provide a formula to meet the requirements of such cases. It appears that the evidence in this case presents serious questions as to (1) whether Holloway was not guilty by reason of insanity on November 23, 1963, and if so, (2) whether he is, or is not, now dangerous to the community.
 (312 So.2d at 702)
And compare Caffey v. State, 78 Miss. 645, 29 So. 396 (1901).
I am of the opinion the jury's verdict of murder, including a finding of sanity at the time of the slayings, was contrary to the overwhelming weight of the evidence. The evidence is clear, unequivocal and certain that Lias was insane at the time of the slayings. It is uncontradicted that he is now sane due to medication with the potential of a return to a psychotic state absent daily medication. I think this Court should commit the appellant to a mental institution for an indefinite period, commensurate with his dependence upon medication for his reason.
I am of the opinion this procedure does not violate due process because the appellant was afforded a fair trial in accord with his defense. Moreover, the evidence of the slayings, insanity at the time, and present sanity, is uncontradicted. The weighing of these facts for the protection of the public demands judicial commitment to a mental institution, in my opinion, whether the procedure be called civil or criminal. I do not understand eitherJackson v. Indiana, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972), or O'Connor v. Donaldson, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975), to command the release of a person with propensities of this appellant. Each of these cases may be distinguished from the present.
A quote from the syllabus in Jackson, supra, is sufficient to distinguish the posture and issue of that case from this. It states:
 Indiana's indefinite commitment of a criminal defendant solely on account of his lack of capacity to stand trial violates due process. Such a defendant cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain competency in the foreseeable future. If it is determined that he will not, the State must either institute civil proceedings applicable to indefinite commitment of those not charged with crime, or release the defendant. Greenwood v. United States, 350 U.S. 366, 76 S.Ct. 410, 100 L.Ed. 412, distinguished.
 (406 U.S. at 716, 92 S.Ct. at 1847, 32 L.Ed.2d at 438.)
And, somewhat similarly, O'Connor, supra, condemned the incarceration of an incompetent and nondangerous individual over a protracted period of time for treatment. It held:
 In short, a State cannot constitutionally confine without more a nondangerous individual who is capable of surviving safely in freedom by himself or with the help of willing and responsible family members or friends. . . .
 (422 U.S. at 576, 95 S.Ct. at 2494, 45 L.Ed.2d at 407.)
In my opinion these cases do not prohibit civil commitment of a dangerous person for the protection of the public.
The violent propensities of Lias are amply illustrated by his past acts which are presently moderated only by medication. Although I think he is without guilt of a crime and not subject to punishment, nevertheless, his dangerous propensities are such that he should be confined to a mental institution for the protection of the public.
With this modification I concur in the result reached by the majority.
[1] The four designated in the indictment and others established by the record.
[2] Miss. Code Ann. § 99-13-7 (1972). When any person shall be indicted for an offense and acquitted on the ground of insanity the jury rendering the verdict shall state therein such ground and whether the accused have since been restored to his reason,and whether he be dangerous to the community. And if the jury certify that such person is still insane and dangerous the judge shall order him to be conveyed to and confined in one of the state asylums for the insane. (Emphasis added.)
[3] Miss. Code Ann. § 99-13-7 (1972). We note the underlined words of the statute above were not included in the instruction. *Page 204